jiGOTHARD, Judge.
This suit for damages arises from a commercial real estate transaction. Plaintiffs, Cynthia Piro and her husband, Gene Le-Blanc, filed this action for negligence and breach of fiduciary duty against Stan Weber and Associates, Inc., Merrill Lynch Realty, Inc., and two real estate agents, Gus Cabrera and Joyce Deutschmann for damages occasioned by the misrepresentation of the property in question as zoned commercial, when in fact, the property is zoned partly commercial and partly residential. Plaintiffs assert that the residential zoning rendered the property unfit for the purposes intended by plaintiffs at the time of purchase.
After a trial on the merits, judgment was rendered in favor of plaintiff, Cynthia Piro,[1] and against the defendants. The court awarded damages for loss of rents in the amount of $450.00 from December, 1991 to date of judgment for a total of $7,600.00; loss of future rents for the period of one year at $450.00 per |2month for a total of $5,600.00; and $10,000.00 in general damages.
Plaintiff, Cynthia Piro, appeals that part of the judgment which refuses damages for loss of rents for the period from April, 1986 to November, 1991. Defendants have answered the appeal objecting to the trial court award of loss rents and general damages.
The facts gleaned from this designated record reveal that the LeBlancs owned and operated a small printing company in Metairie. In 1983 they decided to expand, and discovered a piece of property on the Airline Highway which appeared to be suitable for their needs. Mrs. LeBlanc called Stan Weber and Associates and spoke to Gus Cabrera, the listing agent on the property. Mr. Cabrera discussed the property with Ms. Piro and represented it as being zoned “C2”, a commercial zoning designation. Ms. Piro testified that there were two buildings on the property: a larger building facing Airline Highway which the LeBlancs planned to renovate for use in their business, and a smaller building in the back which they planned to rent out to a small commercial business to help defray the cost of the mortgage note on the property. They discussed the plan with Mr. Cabrera and with Ms. Deutschmann. According to Ms. Piro’s testimony, both agents continually represented the property as having a “C2” zone classification which would have permitted the intended use. Ms. Deutschmann suggested an appropriate rent and offered help in securing a commercial tenant for the back building.
The LeBlancs made an offer for the property which was accepted and the act of sale occurred in October, 1983. Shortly afterward the LeBlancs began renovations and ordered $210,000.00 worth of new printing equipment for use in the building. As part of the renovations, the LeBlancs moved walls, upgraded the electrical system, and added steel supports.
In November, 1983 they put up a sign in an attempt to lease the smaller back building. Upon seeing the sign, certain neighbors began to telephone the LeBlancs to inform them that the hrear portion of the property which faced Johnson Street was zoned “R2”. According to testimony at trial, this was the first timé the LeBlancs became aware of the fact that the entire property was not zoned commercial as they had been told.
The LeBlancs checked into Parish records and discovered that the smaller rear building *465 was indeed zoned residential. They further discovered that the property they had contracted to purchase was, in fact, two separate pieces of property and that the act of sale only conveyed one. An act of correction was necessary to remedy the problem.
The LeBlanes sought, and obtained, a nonconforming use permit for the residential part of the property in December, 1983. Shortly afterward, they signed a lease for use of the property at a rental fee of $550.00 per month with Leon Molinario, who operated Leon’s Plumbing. Taking into consideration the cost of electricity and waste disposal the net amount to plaintiffs was $450.00 per month. However, the matter was not settled with the attainment of the non-conforming use designation. According to Ms. Piro’s testimony, the non-conforming use status would be entered in the Parish records after two years of such use. However, a few weeks before the two-year period ended, the Jefferson Parish Council passed a resolution prohibiting the non-conforming use status. The Parish also filed suit against the Le-Blancs and Mr. Molinario in September, 1985 seeking to enjoin them from leasing and using the property in violation of the “R2” zoning.
Because of the harassment of neighbors, the loss of non-conforming use status and the legal problems, Mr. Molinario moved his business out of the building in April of 1986. For those same reasons, Ms. Piro did not attempt to lease the property to anyone else, although the record shows that the Parish did not actually receive a permanent injunction prohibiting the use of the property as commercial until November 26, 1991.
As previously stated, both parties question the propriety of the trial court’s award of loss of rents. The plaintiff | ¿argues that the trial court erred in not awarding damages for loss of rents from April, 1986, when Mr. Molinario moved out, until November 26, 1991, when the Parish ultimately succeeded in obtaining a permanent injunction against the use of the back building for commercial purposes. Plaintiff asserts that, physically the structure in the rear part of the property was nothing more that a shell or a shed with minimal improvements limited to very minor electrical services and as such the only possible use for the building was commercial. Unfortunately, the Parish would not grant a commercial permit or license for any business operating there because of the lawsuit instituted by the Parish to enjoin the use of the building as commercial. Moreover, any new tenant to whom the building would have been leased would have been added as a defendant in that pending lawsuit.
Defendant argues that loss of rents is an inappropriate measure of damages and asserts that, under C.C. arts. 2529 and 2531, defendants are liable for restoration of the purchase price and reimbursement of reasonable expenses incurred for the preservation of the property, subject to a credit for the value of use of the property. Alternatively defendants argue that the award for one year future rents should be reduced since the property has been listed for sale and the plaintiff has not attempted to rent it.
Initially, we find defendant’s argument with regard to C.C. arts. 2529 and 2531 unconvincing. Those articles are contained within the law of redhibition and concern the obligations of the seller of a defective building. They are inapplicable in this suit against real estate agents for breach of fiduciary duty.
In that portion of the judgment which excludes damages for loss of rents for the period in question the trial court stated, “(T)his Court finds that during this time period the rear part of the property could have been rented and was not and, therefore plaintiff failed to mitigate her damages.”
isThe duty to mitigate damages exists in both tort and contract law. Altazan v. Pontchartrain Dredging Corp., 385 So.2d 292 (La.App. 1st Cir.1980). An injured party has a duty to mitigate only if it is reasonable to do so. Barley v. State, Through State Dept, of Highways, 463 So.2d 689 (La.App. 4th Cir.1985). In mitigating damages, an injured party should exercise the degree of care such as would be taken by an ordinarily prudent individual under the same or similar circumstances. Stanley v. Guy, 442 So.2d 579 (La.App. 1st Cir.1983).
*466 In the instant case the property in question was the subject of a law suit seeking to enjoin its usage as commercial. Ms. Piro testified that she could not rent the space to anyone after Leon’s Plumbing moved out because the building, although zoned residential, was only suitable for commercial use. It was a small warehouse on the back portion of property occupied by a larger commercial warehouse in which plaintiff conducted her printing business. Further, any establishment seeking to lease the building would require a license from the Parish to operate. Ms. Piro testified that such a license was unobtainable since it is against the Parish zoning laws to operate a business in a residential space without a non-conforming use permit.
We find the plaintiffs argument on this issue persuasive. To attempt to lease the building under these circumstances would require a vain and useless act. Thus, we find the trial court erred in not awarding loss of rents for the period from April, 1986 to November, 1991 and we amend the judgment to award such damages at the rate of $450.00 per month.
Defendants also argue that the award of general damages in the amount of $10,000.00 is excessive. The role of the appellate court in a review of a general damage award is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert, denied, Maritime Overseas Corp. v. Youn, — U.S.—, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). We have reviewed the circumstances of this case and cannot find an abuse of discretion in the award of general damages.
In brief to this court, defendants also argue issues of liability and causation of damage which were not appealed and are therefore not reviewable. The plaintiff appealed only that portion of the judgment as it relates to damages and defendants’ answer was specific and restrictive as well.
For the foregoing reasons the judgment of the trial court is amended to award damages for loss of rents from April, 1986 to November, 1991 at the rate of $450.00 per month or $30,600.00. In all other respects the judgment is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.

. The parties divorced during the pendency of this action and Mr. LeBlanc assigned his rights in the law suit to Ms. Piro. Consequently, he is no longer a parly to this action.