771 So.2d 848 (2000)
Lawrence GASTON, Plaintiff-Appellee,
v.
BOBBY JOHNSON EQUIPMENT COMPANY, INC., Defendant-Appellant.
No. 34,028-CA.
Court of Appeal of Louisiana, Second Circuit.
November 3, 2000.
*850 Walter White, Counsel for Appellant.
Wiener, Weiss & Madison by Geoffrey D. Westmoreland, Shreveport, Counsel for Appellee.
Before STEWART, GASKINS and CARAWAY, JJ.
GASKINS, J.
The plaintiff, Lawrence Gaston, filed suit against the defendant, Bobby Johnson Equipment, Inc. ("Johnson"), seeking the rescission of a sale, alleging that the truck engine sold to him by the defendant had a redhibitory defect. The trial court made an award to the plaintiff of $16,680.00, for parts and labor on the engine, as well as for lost profits. Both parties appealed. Johnson questions the finding of a redhibitory defect, while Gaston questions the denial of attorney fees. For the reasons set forth below, we affirm in part and reverse in part the trial court judgment.

FACTS
Gaston operates a dump truck business. He needed a new engine for one of his trucks and made inquiries of Johnson about obtaining one. Johnson then purchased an 8V71 diesel truck engine from Jerry McCoy in Texarkana. McCoy had rebuilt the engine and gave Johnson a 90-day warranty on the parts. On October 22, 1997, Gaston bought the engine from Johnson for $4,500.00. Johnson adapted the engine to fit into Gaston's truck. Gaston's mechanic installed the engine along with a new pressure plate, clutch and other parts.
The engine never functioned properly. Gaston complained of severe rattling and a lack of power from the engine. He returned the truck several times to Johnson for repair, but despite Johnson's attempts to repair the engine, the problem never abated. Gaston drove the truck approximately 43 hours when the engine finally broke down and was rendered useless due to a broken crankshaft.
When Gaston returned the truck to Johnson to be repaired, Johnson requested that Gaston obtain a new block and crankshaft for the engine. Gaston purchased the parts at a cost of $1,000.00. Instead of completing the repairs in its shop, Johnson apparently sent the truck to Jerry McCoy for repairs. McCoy then had a heart attack and was unable to complete the work. Johnson did not have McCoy return the truck after McCoy was unable to repair the truck. Despite Gaston's numerous inquiries, Johnson did not repair the truck from June 1998 to October 1998. On October 20, 1998, Gaston filed suit against Johnson, claiming that the engine had redhibitory vices and seeking return of the purchase price as well as lost profits and attorney fees.
Trial was held on April 8, 1999. Gaston testified regarding the purchase of the engine *851 and the fact that it never operated properly. He recounted Johnson's attempts to repair the engine by changing the injectors. Then, after using the truck for approximately 43 hours, the crankshaft "locked up." He returned the truck in April 1998, but repairs were never made, even though Gaston and his driver, James Watkins, called Johnson once or twice per week. After Gaston filed suit, he was able to retrieve the truck body. However, the engine, new crankshaft, clutch and pressure plate package and the engine mounting brackets were missing.
George Tyler, a mechanic for Johnson, testified that after Gaston purchased the engine and had it installed in the truck, Tyler did a tune-up on the engine and later put in a set of injectors. The truck was then sent back to McCoy and at that point it was discovered that the truck had a damaged fuel line.
Jerry McCoy testified that he sold the engine to Johnson. McCoy had overhauled the engine and then drove the engine to Johnson in another truck. He stated that at that time the engine ran fine. McCoy gave Johnson a 90-day warranty on the engine. McCoy was later informed that the engine was not operating satisfactorily after the sale to Gaston. According to McCoy, the problem was that the fuel line was crushed when the engine was installed in the truck. He testified that he got the truck back in July 1998, to repair the broken crankshaft. He claimed that he did not work on the engine for several months because he had been ill, had a lot of work and was working on this engine for free.
The trial court found in favor of Gaston, granting him an award of $16,680.00. In reasons for judgment, the trial court noted that Gaston claimed the engine had a redhibitory vice or defect under La. C.C. art. 2520 and also alleged that Johnson was a manufacturer under La. C.C. art. 2545. The trial court rejected Johnson's contention that the problem with the truck was caused by a crushed fuel line. The court stated, "There is no evidence in the records which would lead this court to believe that the errors of the plaintiff [were] the cause of the engine's failure to perform properly. Additionally, it was established that the defendant had attempted to repair the problem on several occasions before the engine completely failed." The court awarded Gaston $4,500.00, the purchase price of the engine, $700.00 in labor, $400.00 for parts, $1,000.00 for a new block and crankshaft and $10,080.00 in lost profits for a total award of $16,680.00. The court made no mention of whether Johnson was a manufacturer under La. C.C. art. 2545, entitling Gaston to attorney fees. However, no award for attorney fees was made. Judgment was filed September 1, 1999, awarding Gaston $16,680.00 in damages, with costs and legal interest from the date of judicial demand. The defendant appealed and the plaintiff answered the appeal.

REDHIBITION AND STANDARD OF REVIEW
In this case, Johnson essentially argues that the trial court erred in finding that the engine had a redhibitory defect. It contends that any defect that existed was in the truck and not the engine. It also asserts that any defect which existed was apparent. Finally, Johnson urges that any problems with the truck were caused by the plaintiff's abuse or misuse of it. These arguments are without merit.
A seller warrants the buyer against redhibitory defects or vices in the thing sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed the buyer would not have bought the thing if he had known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale. La. C.C. art. 2520; Berney v. Rountree Olds-Cadillac Company, Inc., 33,388 (La.App.2d Cir.6/21/00), 763 So.2d 799.
*852 The implied warranty against redhibitory defects covers only hidden defects, not defects that were known to the buyer at the time of the sale, or defects that should have been discovered by a reasonably prudent buyer. La. C.C. art. 2521. To prevail in such a proceeding, the plaintiff must also prove that the defect existed at the time of sale, and that he afforded the seller an opportunity to repair the thing. Savannah v. Anthony's Auto Sales, Inc., 618 So.2d 676 (La.App. 2nd Cir.1993), writ denied, 626 So.2d 1174 (La. 1993). However, the plaintiff does not have to prove exactly what the defect was, but rather that there was a defect in the product that existed at the time of sale. Robert v. Bayou Bernard Marine, Inc., 514 So.2d 540 (La.App. 3rd Cir.1987), writs denied, 515 So.2d 1107, 1108 (La.1987). Proof that a redhibitory defect existed at the time of sale can be made by direct or circumstantial evidence, giving rise to a reasonable inference that the defect existed at the time of the sale. Berney v. Rountree Olds-Cadillac Company, Inc., supra.
La. C.C. art. 2530 provides that if the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale. In all sales transactions, the seller impliedly warrants that the thing sold is free of redhibitory defects and is reasonably fit for its intended purpose. Although this warranty does not apply as extensively as with new products, it requires that even used equipment operate reasonably well for a reasonable period of time. Berney v. Rountree Olds-Cadillac Company, Inc., supra.
The existence of redhibitory defects is a question of fact, and the trial court's conclusions about them should not be set aside absent manifest error. Parker v. Dubus Engine Company, 563 So.2d 355 (La.App. 3d Cir.1990). An appellate court may not set aside a trial court's finding of fact absent manifest error or unless the fact finder is clearly wrong. Lewis v. State, Through Department of Transportation and Development, 94-2370 (La.4/21/95), 654 So.2d 311; Thomas v. Albertsons, Inc., 28,950 (La.App.2d Cir.3/27/96), 685 So.2d 1134, writ denied, 97-0391 (La.3/27/91), 692 So.2d 395.
In the present case, Gaston immediately complained about the performance of the engine. The defect in the engine was so severe that, after only a short period of use, it ceased functioning entirely. Johnson attempted on several occasions to remedy the problem. As stated above, the plaintiff only had to show that a defect existed in the engine. He did not have to show the cause of the defect. These factors show that there was a redhibitory defect in the engine that was not readily discoverable. Further, the trial court fully considered the evidence concerning alleged defects in the truck and Johnson's arguments that the shaking and vibration were caused by a crushed fuel line, improper connection of the oil line, or low oil level. The trial court made a specific finding of fact, rejecting these contentions. Based upon the record before us, we find that the trial court was not manifestly erroneous or clearly wrong in that conclusion. Therefore, the plaintiff established that the engine had a redhibitory defect.

WARRANTY
Johnson argues that the trial court failed to apply the true conditions of a 90-day warranty that he received from McCoy. Johnson contends that the warranty was not extended beyond the original 90 days from the date of purchase. Johnson objects to a finding by the trial court that "The defendant gave a 90-day warranty on the engine which he stated would not begin until the engine was running properly." The record contains testimony indicating that the parties discussed the 90-day warranty period and Gaston requested that it not begin to run until the engine was adequately repaired. However, *853 in this case we find that the application of the 90-day warranty period is not dispositive of the issues presented. The plaintiff argues that the engine had a redhibitory vice covered by the implied warranty set forth in the Louisiana Civil Code. Under La. C.C. art. 2520, the seller impliedly warrants the things he sells for reasonable use. Berney v. Rountree Olds-Cadillac Company, Inc., supra. Therefore, any argument concerning the application of the 90-day warranty is of no moment in this case. Even if this warranty was not applicable, the implied warranty against redhibitory vices is pertinent here. Accordingly, this argument is without merit.

MANUFACTURER
Johnson asserts that the trial court erred in not finding that Gaston was a manufacturer. Johnson points to the fact that Gaston had the engine installed by his own mechanic. Johnson then contends that Gaston's driver did not properly maintain the engine. Johnson argues that these facts cause Gaston to be a manufacturer who is charged with knowledge of all defects in the engine. This argument is without merit.
The issue of whether a party is a manufacturer is usually argued against the seller of the thing, not the purchaser. La. C.C. art. 2545 provides as follows:
A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use or fruits.
A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.
Under this provision, the seller is deemed to know that the thing he sells had a redhibitory defect when he is a manufacturer of that thing. Cross references under the article indicate that a "manufacturer" is defined in La. R.S. 9:2800.53 which provides:
(1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
(a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.
(b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
(c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.
(d) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. The court shall take into consideration the following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence. A "product of an alien manufacturer" is a product that is manufactured outside the *854 United States by a manufacturer who is a citizen of another country or who is organized under the laws of another country.
We do not find that Gaston meets this statutory definition of a "manufacturer." We also find that Johnson's argument in this regard is misplaced. Johnson contends that the case of Foust v. McKnight, 95-2008 (La.App. 1st Cir. 5/10/96), 675 So.2d 1147, writ denied, 96-2117 (La.11/8/96), 683 So.2d 277, is applicable to the present facts. In Foust, the defendants had improperly constructed an addition to their house which resulted in water damage and rotten subfloors in some areas of the house. After the defendants sold the house, the buyers sued, alleging that the house had redhibitory defects. The defendants were considered to be a manufacturer because they built the addition and were found to have knowledge of the defects. However, in that case, the manufacturer was the seller of the defective thing. In the case sub judice, Johnson has not shown any authority for applying La. C.C. art. 2545 to the buyer of the thing. Further, as noted above, the trial court had before it all evidence of the buyer's installation and maintenance of the engine and found that none of the buyer's actions were the cause of the failure of the engine to perform properly. Therefore, the trial court discounted Johnson's argument that Gaston had notice of defects in the engine due to the installation and maintenance of it. As stated earlier, based upon the record before us, we do not find that the trial court's finding of fact was manifestly erroneous or clearly wrong.

FAILURE TO CALL WITNESS
Johnson objects to Gaston's failure to call "Pop" Willis, Gaston's mechanic, who installed the engine. According to Johnson, Willis had knowledge of the installation of the engine as well as the alleged abuse of the truck by Gaston and his driver. Johnson contends that this was the only witness who had personal, intimate, detailed knowledge of the engine after it left the custody of Johnson. Therefore, Johnson asserts that the failure by the plaintiff to call Willis as a witness should create a presumption that his testimony would have been unfavorable to Gaston. This argument is without merit.
Although an adverse presumption does exist when a witness is available to a party and he fails to call him, the presumption is rebuttable and should not apply when the witness is equally available to the opposing party. Griffin v. Foti, 523 So.2d 935 (La.App. 4th Cir.1988), writ denied, 531 So.2d 272 (La.1988). See also Thomas v. Albertsons, Inc., supra. In this case, Willis was as available to Johnson as he was to Gaston. Therefore, Gaston's failure to call Willis as a witness cannot be construed against him.

MITIGATION OF DAMAGES
Johnson argues that Gaston failed to prove damages with specificity, and failed to properly mitigate damages. It contends that the tax returns, non-specific testimony of the plaintiffs witnesses and the plaintiffs "wishful optimism" as to what he would have made with the second truck was wholly and completely speculative. Johnson contends that the plaintiff should have leased a truck and used it to meet his business needs. This argument is without merit.
An injured party has a duty to mitigate only if it is reasonable to do so. In mitigating damages, an injured party should exercise the degree of care such as would be taken by an ordinarily prudent individual under the same or similar circumstances. LeBlanc v. Stan Weber & Associates, 93-1057 (La.App. 5th Cir. 5/31/94), 638 So.2d 463; Barley v. State, Through Department of Highways, 463 So.2d 689 (La.App. 4th Cir.1985).
Gaston presented his income tax returns which show that his gross income for 1997 was $60,418.00. He also presented *855 the testimony of Chris Hickman of Gray's Construction Company, John Johnson of Johnson Construction, Jimmy Williams of Triple J Dump Trucks, and Tom Fussell of the Fussell Company. All testified that they frequently hired Gaston to haul material and could have given him more work if the second truck had been operational. The witnesses testified that Gaston frequently worked 9 to 10 hour days at $37.50 per hour. Based upon this evidence, the trial court found that Gaston has sustained lost profits in the amount of $10,080.00. The court determined that Gaston could have operated the truck for three days per week, each week, for the months of May, June and July 1998, for eight hours per day, at a rate of $37.50 per hour. Given this evidence, we conclude Johnson has failed to show that there was manifest error or an abuse of discretion in the trial court's decision to grant an award to Gaston for loss of profits.

ATTORNEY FEES
Gaston answered the appeal, arguing that the trial court erred in failing to award attorney fees. According to Gaston, the trial court must have determined that Johnson was a manufacturer under La. C.C. art. 2545 because recovery was allowed for loss of profits. Therefore, the trial court erred in failing to also award attorney fees. This argument has merit.
The trial court did not specifically state in reasons for judgment that Johnson was a manufacturer of the engine or that he knew of the defect. However, the trial court did make an award for loss of profits. The liability of a bad faith seller, that is one who knew of the defect or was a manufacturer who is deemed to know of the defect, is governed by La. C.C. art. 2545, discussed above. The jurisprudence construing these provisions holds that while a bad faith seller is liable for damages, including loss of profits and attorney fees, a good faith seller is not. When the thing sold has a redhibitory defect, the seller who knew not of the vices of the thing is only liable for the return of the price and the expenses of the sale.[1]
A manufacturer is conclusively presumed to have knowledge of defects in the object it produces. Since the manufacturer's knowledge is conclusively presumed, the manufacturer is deemed to be in bad faith in selling a defective product and is liable to the buyer for damages and attorney fees, in addition to the purchase price and expenses occasioned by the sale. Recovery for lost profits is an element of damages which is only allowed against a bad faith seller or manufacturer. Frentress v. Howard, 31,609 (La.App.2d Cir.2/24/99), 728 So.2d 1019.
In the present case, it was not shown that Johnson knew that the engine was defective. The trial court allowed recovery to Gaston for lost profits, apparently finding that Johnson was a manufacturer. That conclusion is supported by the record. After its purchase from McCoy, Johnson further modified the engine by installing additional parts on it to make it compatible with Gaston's truck. It then sold the modified engine to Gaston. *856 Therefore, Johnson falls within the definition of a manufacturer contained in La. R.S. 9:2800.53. Accordingly, we find that the trial court erred in failing to make an award to Gaston for attorney fees.
An award of attorney fees must be reasonable, based upon the degree of skill and work involved in the case, the number of court appearances, the depositions, and the office work involved. Frentress v. Howard, supra.
Gaston's attorney submitted an affidavit and documentation outlining the hours expended and the expenses charged in the prosecution of this case. Time was spent in client and witness interviews, gathering evidence, researching the law, preparing pretrial briefs, trial preparation and actual litigation of this case. Gaston's counsel has submitted documentation supporting an attorney fee award of $9,096.00 and expenses of $883.52. We find that in light of the work involved in this case, the charges are reasonable and accordingly we award these amounts to the plaintiff.

CONCLUSION
For the reasons stated above, we affirm that portion of the trial court judgment awarding the plaintiff, Lawrence Gaston, recovery of $4,500.00 for the purchase price of the engine, $700.00 in labor, $400.00 for parts, $1,000.00 for a new engine block and crankshaft, and $10,080.00 in loss of profits.
We reverse that portion of the trial court which failed to award attorney fees to Gaston. We award attorney fees to the plaintiff in the amount of $9,096.00 and expenses in the amount of $883.52. Costs in this court are assessed to the defendant, Bobby Johnson Equipment Company, Inc.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] The liability of a seller who is not a manufacturer and who does not know of the defect is set forth in La. C.C. art. 2531:

A seller who did not know that the thing he sold had a defect is only bound to repair, remedy, or correct the defect. If he is unable or fails so to do, he is then bound to return the price to the buyer with interest from the time it was paid, and to reimburse him for the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, less the credit to which the seller is entitled if the use made of the thing, or the fruits it has yielded, were of some value to the buyer.
A seller who is held liable for a redhibitory defect has an action against the manufacturer of the defective thing, if the defect existed at the time the thing was delivered by the manufacturer to the seller, for any loss the seller sustained because of the redhibition. Any contractual provision that attempts to limit, diminish or prevent such recovery by a seller against the manufacturer shall have no effect.