789 So.2d 710 (2001)
Mickie S. Merlin, Wife of/and Mark Louis MERLIN, M.D.,
v.
FUSELIER CONSTRUCTION, INC., and Antonia Montelaro Arrington Wife of/and David M. Arrington, M.D.
No. 00-CA-1862.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 2001.
Rehearing Denied August 6, 2001.
*713 Jacqueline G. Griffith, John Pecarrere, Griffith, Battard & Johnson, New Orleans, LA, Attorney for Defendants/Appellants (Antonia Montelaro Arrington wife of/and David M. Arrington, M.D.)
Jack E. Morris, Metairie, LA, Attorney for Plaintiffs/Appellees (Mickie S. Merlin, wife of/and Mark Louis Merlin, M.D.)
Irwin, Fritchie, Urquhart & Moore LLC, New Orleans, LA, Attorneys for Third Party Defendants/Appellees (Rochelle Sackette and Real Estate Partners, Inc.)
Panel composed of Judges SOL GOTHARD, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
GOTHARD, Judge.
Plaintiffs, Dr. and Mrs. Merlin, filed this suit for breach of warranty and in redhibition after they purchased a three year old house which they alleged had a defective roof. They further alleged that the sellers knew or should have known of the defect prior to sale, and therefore were in bad faith. Named as defendants in the suit were Fuselier Construction Company ("Fuselier"), builder of the house, and Dr. and Mrs. Arrington, the sellers. Both Fuselier and the Arringtons filed a third party demand against Pedro Ruiz, the subcontractor who installed the roof. By judgment dated July 21, 1999, the trial court granted exceptions of no cause and/or right of action and prescription, and dismissed Fuselier from this suit.
Thereafter, the Arringtons filed a third party demand against Rochelle Sackett and ReMax Real Estate Partners, Inc. ("ReMax"), the listing agents in the real estate sale. On May 30, 2000, trial was had, and on June 1, 2000, the trial court rendered judgment in favor of plaintiffs and against the Arringtons for repair costs of $7,910.00, plus judicial interest from date of demand, attorney fees of $6,965.00 and $579.70 in court costs. The trial court further granted judgment in favor of Rochelle Sackett and ReMax, dismissing the third party demand against them with prejudice.
The Arringtons filed a motion for new trial, which was denied by the trial court, and this appeal followed.

FACTS
The Arringtons were the first owners of a house at 2604 Labarre Lane, which was built by Fuselier. On November 30, 1996, they entered into an agreement to purchase or sell with the Merlins, who agreed to purchase the house for the sum of $400,000.00. At that time the house was two and one-half years old. Included in the purchase agreement was a document entitled "Property Disclosure Addendum," which listed no defects. The Act of Sale was executed on April 30, 1997.
At the trial of this matter, Dr. Merlin testified that he and his wife inspected the property twice before the act of sale. They did not see anything wrong with the property and the inspector's report did not reveal a defective roof. They moved into the property at the end of June, after he finished his residency in Georgia. They had only visited the property once after the sale and prior to the move.
Dr. Merlin further testified that immediately after the sale, he met the next door neighbor of the property, who asked him what he intended to do about the roof. He told Dr. Merlin that the house had recurring *714 roof problems. The neighbor took him into his (neighbor's) house, to a second floor window, where he was able to see the roof of his house. He observed that a large patch of shingles was falling off.
Dr. Merlin further testified that when he and his wife moved into the house, he contacted the builder, and was referred to the roofer, Pedro Ruiz. He spoke with Mr. Ruiz and was told that although he had installed the roof, he was a painter, not a roofer, by trade. Ruiz told Dr. Merlin that he had returned to the house on several occasions to repair the roof.
Dr. Merlin stated that he and his wife had asked, prior to the sale, if there had been roof leaks and were told no. After they moved in, an electrician who came to the house to show them the alarm system, showed them a leak mark that had been painted over.
Dr. Merlin hired David Ryan to inspect the roof, and then he called an attorney. Fuselier told him that they would install a new roof over the existing roof for $500.00, or take off the old roof and install a new roof for $750.00. Dr. Merlin declined, because he understood that it would be Ruiz to do the work, and he did not feel Ruiz was competent, and because he did not believe he should have to pay anything. Demand was made on the sellers, and they failed to repair the roof, so he contacted various roofing companies and obtained estimates. He ultimately hired Dial One Brooks Roofing to replace the roof, and instituted this suit.
Brent Kovach was the neighbor whose house overlooks the plaintiffs' house. He testified that, while the defendant owned the house, he observed the shingles of the roof falling off and dropping into the gutter one by one.
David Ryan, owner of Roofing Inspection and Consulting Services, Inc., was qualified as an expert in roofing. He was hired by plaintiffs to inspect the roof. He stated that the original roof was improperly installed, and because of the improper installation, the old roof needed to be removed and a new roof installed.
Tom Brooks, owner of Dial One Brooks Roofing, testified that he was hired by plaintiffs to replace the roof. He testified that the old roof was delaminated and falling off, and was not suitable as a base for the new roof.
Greg Fusilier testified that he was contacted by plaintiffs, and he turned the matter over to his project manager, Robin D'Aunoy. D'Aunoy testified that he sent Curtis Bourgard, his roofer, who reported that there were some loose shingles on the roof. D'Aunoy told plaintiffs that they would do a roof over for $500.00 or reroof the house for $750.000, and that Bourgard, not Ruiz, would perform the labor.
Michael Gurtler, defense expert, testified that he inspected the house. He found no evidence of leaking. His examination did reveal some loose shingles, which he noted on his report. He admitted that if the roof had been properly installed, the shingles would not have been a problem. He was of the opinion, however, that a reroof was not necessary and that a roof over would have been satisfactory.
The seller, Dr. Arrington, had purchased the house new. In the two and one-half years, he had the roof repaired three times. Because the roof had been repaired, he did not consider the roof to be an existing problem. He knew there had been a leak in the foyer; but he was told that the leak was caused by a flash pan that had been fixed. He relied on the assurances of his real estate agent, (Sackett) that if the problem had been fixed, it need not be disclosed. He knew that the punch list stated loose shingles, and he had *715 asked that they be repaired even though the buyers did not.
Rochelle Sackett, a real estate agent with ReMax, listed the property for sale by the Arringtons. The house was two and one-half years old, and appeared in excellent condition. The Arringtons told her that, on a couple of occasions, a strong wind had blown off some shingles, and that the contractor had fixed them. She was not told that the shingles were a serious and continuing problem. She was also not informed of any roof leaks.

ANALYSIS

REDHIBITION
Defendants first allege that the trial court erred in finding that the defects in the roof were not known and/or discoverable to plaintiffs pursuant to La. C.C. art. 2521. Appellant argues that the plaintiffs were put on notice of defects in the roof and are therefore not entitled to recovery.
The seller of a home impliedly warrants to the buyer that it is free from redhibitory vices or defects. Amend v. McCabe, 664 So.2d 1183 (La.1995); La. C.C. art. 2475, 2520. A redhibitory defect is one that renders the thing either absolutely useless or makes its use so inconvenient that it must be supposed that the buyer would not have purchased the home had he known of the vice or defect. A defect is also redhibitory if, without rendering the thing useless, it diminished its usefulness or value so that it must be presumed that the buyer would still have bought it, but for a lesser price. La. C.C. art. 2520.
Not all redhibitory defects will warrant recission of the sale or reduction of the price. "The seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things." La. C.C. art. 2521.
To determine whether the defect is apparent, one must consider whether a reasonably prudent buyer, acting under similar circumstances, would discover it through a simple inspection of the property. A simple inspection is more than a casual observation; it is an examination of the article by the buyer with a view of ascertaining its soundness.
Amend v. McCabe, supra at 1188.
A buyer is only under a duty to make an inspection which is reasonable in light of all the circumstances surrounding the sale. Whether an inspection is reasonable depends on the facts of each case and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection, and the assurances made by the seller. Landaiche v. Supreme Chevrolet, Inc., 602 So.2d 1127 (La.App. 1 Cir. 1992).
The existence of a redhibitory defect is a question of fact which cannot be disturbed unless therecord as a whole establishes that the finding is manifestly erroneous or clearly wrong. Likewise, the determination of whether a defect is apparent by reasonable inspection is a factual determination, which will not be disturbed by the appellate court unless manifestly erroneous. Landaiche v. Supreme Chevrolet, Inc., supra.
In Glynn v. Delcuze, 149 So.2d 667 (La. App. 4 Cir.1963), the plaintiff observed some broken shingles before the Act of Sale. After the sale, the plaintiff discovered that the roof had been improperly constructed. The court allowed recovery from the vendor of the amount necessary to replace the roof, finding that plaintiff did not and could not have discovered the true condition of the roof by simple inspection.
*716 In Rice v. Lee, 442 So.2d 605 (La.App. 1 Cir.1983), the appellate court allowed recovery for the replacement cost of a roof, when various severe leaks were discovered several months after the sale. While the purchasers had knowledge of leaks that occurred prior to the sale, they were assured that the leaks had been fixed. The cause of the roof leaks was the fact that the felt underneath the slate shingles was rotting, which would not be readily apparent to the untrained eye.
In this case, the purchasers had a house inspection prior to the Act of Sale. This report stated in pertinent part that "A few nail pop ups were noted, as evidenced by the small humps in the shingles ... a few shingles on the right slope over the front bedroom appears loosely secured, potentially because of loose subdecking." At trial, it was discovered that the cause of the roof leaks was not a few pop up nails, or loose subdecking; the cause of the leaks was that the roof had been improperly installed, a fact not discovered by the inspector hired by the plaintiffs. In the case of Collins v. Curtis, 97-2348 (La.App. 4 Cir. 9/30/98), 719 So.2d 679, 681-82, the Court noted that "The buyers cannot be expected to discover a defect that got past trained professionals."
Accordingly, we find no error in the trial court's determination that the improperly installed roof was a redhibitory defect not known to or discoverable by a reasonably prudent buyer.
Appellants also argue that the trial court erred in determining that the costs of repairs to the house were not excessive and should have been reduced for the failure of the plaintiffs to mitigate damages.
The duty to mitigate damages exists in both tort and contract law. An injured party has a duty to mitigate only if it is reasonable to do so. LeBlanc v. Stan Weber and Associates, 93-1057 (La.App. 5 Cir. 5/31/94), 638 So.2d 463, 465. In mitigating damages, an injured party should exercise the degree of care such as would be taken by an ordinarily prudent individual under the same or similar circumstances. Gaston v. Bobby Johnson Equipment Co., Inc., 34,028 (La.App. 2 Cir. 11/3/00), 771 So.2d 848, 854; LeBlanc v. Stan Weber and Associates, supra at 465.
Here, plaintiff testified that he was told that he would have to pay for the repairs to his roof, and that he believed that the roofer who improperly installed the first roof would be the one to repair or replace the roof. Under these circumstances we cannot say that the trial court erred in finding that plaintiff acted reasonably in hiring an independent roofer to reroof his house. This allegation is without merit.
Defendants next allege that the trial court erred in finding that the Arringtons were in bad faith in the sale of their home and assessing them for the plaintiffs' attorneys fees, costs and penalties.
To recover attorney fees, the buyer must prove that the seller had knowledge of the defect prior to the sale. However, the buyer need not prove willful misrepresentation; it is sufficient if he only shows actual or constructive knowledge by the seller. If the seller knew or should have known of the defect and failed to declare it to the buyer, the seller is liable for reasonable attorney fees. C.C. art. 2545; Reilly v. Gene Ducote Volkswagen, Inc., 549 So.2d 428, 434 (La.App. 5 Cir.1989).
The evidence at trial showed that the roofing problem was ongoing, and that at least two attempts at repair had been made to this two-and-one-half year old roof prior to the sale of the property. There were missing shingles observed by the purchasers on the day after the Act of Sale. The trial court found that the Arringtons *717 were aware of the defects in the roof prior to the sale to plaintiffs. We find no manifest error in the trial court's decision, and therefore the plaintiffs are entitled to recover attorney fees in this case.

LIABILITY OF THIRD PARTIES
Appellants next allege that the trial court erred in not rendering a judgment against the third party defendants, Rochelle Sackett and ReMax Real Estate Partners, Inc.
An action for misrepresentation arises ex delicto, rather than from contract. In order for a plaintiff to recover for negligent misrepresentation, there must be a legal duty on the part of the defendant to supply the correct information, a breach of that duty, and damage to the plaintiff caused by the breach. Osborne v. Ladner, 96-0863 (La.App. 1 Cir. 2/14/97), 691 So.2d 1245. A real estate broker or agent owes a specific duty to communicate accurate information to the seller and the purchaser and may be held liable for negligent misrepresentation. Osborne v. Ladner, supra.
Here, Ms. Sackett testified that the sellers told her that shingles had blown off on a couple of occasions, and that the roof had been satisfactorily repaired. She further testified that she was never told that the roof was leaking. Based on these assertions, that there was no leaking and that the shingles had been satisfactorily fixed, she advised the appellants that they need not disclose the fact that the roof had been fixed because it was not an ongoing problem. Thus, the trial court found that Ms. Sackett did not act negligently. We cannot say that the trial court was manifestly erroneous in this determination.
Defendants further argue that the trial court erred in not assessing a percentage of fault to third parties for whom the Arringtons had no responsibility. In this allegation of error, defendants allege that the trial court erred in failing to find comparative fault on the part of third parties. However, "Comparative negligence is not a defense in a redhibition suit. A redhibition suit is a contractual action. Comparative negligence may only be asserted in a tort action. LSA C.C. Art. 2323." Hostetler v. W. Gray & Co., 523 So.2d 1359, 1368 (La.App. 2 Cir.1988).[1] Accordingly, we find no error in the trial court's failure to apportion fault.
Defendants also argue that the trial court erred in not rendering a judgment against third party defendant, Pedro Ruiz.
In this case, the defendants argue that they had obtained a preliminary default against Mr. Ruiz for his negligence in installing the roof, and that the trial court erred in failing to confirm this preliminary default on motion during the trial. However, the pleadings and any transcript of this preliminary default, as well as a written motion to confirm the default, if any, are not present in the record. Accordingly, there is nothing before this court to review.

EVIDENTIARY RULINGS
Defendants assign as error the trial court's certification of plaintiffs' expert in the field of roofing. Appellants argue that the trial court erred in certifying David *718 Ryan as an expert witness for the plaintiffs.
Whether an expert meets the qualifications of an expert witness and the competency of the expert witness to testify in specialized areas is within the discretion of the trial court. The exercise of that discretion will not be disturbed by an appellate court unless it is clearly erroneous. Labit v. D.H. Holmes Co., Ltd., 98-238 (La.App. 5 Cir. 10/14/98), 721 So.2d 933.
Here defendants argue that the trial court failed to apply the precepts of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). We note that in Daubert, the United States Supreme Court was concerned with determining the admissibility of new techniques as a basis for expert scientific testimony.
In the case of Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the court noted that a trial court may apply Daubert when determining the admissibility of all expert testimony. The court also recognized, however, that a trial court has broad discretion in determining whether Daubert's specific factors are reasonable measures of reliability in a particular case. Ultimately, the trial court's decision to admit or exclude expert testimony is subject to the abuse of discretion standard of review. State v. Stokes, 99-1287 (La.App. 5 Cir. 4/13/00), 759 So.2d 980, 00-1219 (La.2/16/01), ___ So.2d ___, 2001 WL 150071. See also Cannon v. Sunbeam Corporation, 99-2181 (La.2/29/00), 755 So.2d 226.
Furthermore, we note that La. C.E. art. 702 also allows expert testimony based on "technical or other specialized knowledge."
Mr. Ryan testified that he had worked in the roofing business for twenty years, that he was the owner of a roofing company and an inspection company, that he was licensed by the State, and that he had previously testified as an expert in both Jefferson and Orleans parishes. Under these circumstances we cannot say that the trial court was clearly wrong in qualifying Mr. Ryan as an expert.
Finally, defendants argue that the trial court erred in allowing prejudicial hearsay evidence. More specifically, they allege that the trial court erred in allowing plaintiff to testify as to what Pedro Ruiz told him about the roof. However, even absent the testimony of Mr. Ruiz, there was sufficient evidence to prove that the roof was defective, and that the defendants knew of the defect at the time of the sale to plaintiffs.

PLAINTIFFS' ALLEGATION
In their brief, the Merlins request additional attorney's fees for the prosecution of this appeal. Gandy v. United Services Automobile Association, 98-215 (La.App. 5 Cir. 10/14/98), 721 So.2d 34, writ denied, 98-2836, (La.1/15/99), 736 So.2d 208.
We agree that plaintiffs are entitled to additional fees to compensate counsel for work related to post-trial proceedings, including this appeal. We find $1,500.00 to be an appropriate figure, and therefore we render judgment awarding an additional $1,500.00 in attorney's fees.

CONCLUSION
For the above discussed reasons, the judgment of the trial court is affirmed. Plaintiffs are further awarded $1,500.00 in attorney's fees for this appeal. All costs are assessed against appellants.
JUDGMENT OF THE TRIAL COURT AFFIRMED; JUDGMENT ON ATTORNEY'S *719 FEES ON APPEAL RENDERED.
NOTES
[1] In Hostetler v. W. Gray & Co., 523 So.2d 1359, 1368 (La.App. 2 Cir.1988) the court said:

The underlying transaction in this case is a sale, a type of contract. LSA-C.C. Art. 2439. The relevant conventional obligation in this case is found in LSA-C.C. Art. 2475 and 2476 which provide that the seller warrants that the thing he sells is free from redhibitory vices. Gray did not fulfill this obligation. For breach of this conventional obligation, the code grants the purchaser the remedy of redhibition. Redhibition is thus a remedy for contractual fault, not delictual fault.