JAMES C. GULOTTA, Judge Pro Tempore.
| ¿This is an appeal by Heath Parker from a district court review and affirmation of a judgment of the Mayor’s Court for the City of Kenner, declaring an animal to be dangerous, fierce and vicious and ordering the animal to be destroyed. The matter was brought before the mayor’s court by Bill of Information citing Parker Heath, the owner of a pit bull canine known as “Bacon” with a violation of Ken-ner Public Nuisances and Vicious Animals Ordinances, Chapter 4, Section 83, et seq.

FACTS

On August 20, 2004, Tracy Gordon took her six-year-old daughter, Cara, to the La Quinta Inn to visit a relative. According to her testimony, Ms. Gordon met her relative, Linda Parker, at the pool of the hotel. When it began to rain, the two women and the child went into Ms. Parker’s room. Bacon, who belongs to Ms. Parker’s son Heath, was also in the room. Ms. Gordon was looking at some | ¡¡clothes, and Ms. Parker was in the bathroom when Cara screamed. The child was bleeding and a large portion of her forehead was missing. Ms. Gordon got a towel and laid the child on the bed. Bacon got between the two, attempting to get at Cara. Ms. Gordon pulled the dog by the legs, but was unable to push the dog off of the bed until Ms. Gordon helped. Eventually, Ms. Parker managed to get Bacon into the bathroom. Emergency help soon came and Cara was taken to the hospital where over one hundred sutures were required to reconnect a large, round piece of skin to her forehead. Ms. Gordon testified that Cara first told her the dog’s collar caused the *481 wound, later she told her mother the dog jumped on her and bit her.
Ms. Parker’s account of the incident is different from that of Ms. Gordon. Ms. Parker testified that she heard Cara scream, but never saw Bacon bite or act aggressively toward her.
The City of Kenner presented Doyce Vallee of the Jefferson Parish Animal Shelter as an expert in animal behavior. However, at the end of voir dire the trial judge limited Ms. Vallee’s qualification to the issue of euthanasia. She testified that Bacon was a large, muscular pit bull weighing an estimated 80 pounds. Ms. Vallee stated that Dan Crutchfield, a dog trainer sent in by Bacon’s owner, entered Bacon’s cage. When he did, Bacon crouched down, urinated and was about to spring when Mr. Crutchfield said, “he’ll bite” and jumped out of the cage, slamming the door. Ms. Vallee explained that Bacon is a “fear biter” and will bite when out of his element and presented with people he does not know. Based on her experience and observance of Bacon’s behavior, Ms. Vallee did not believe Bacon should be released, and recommended euthanasia.
There was testimony from animal control officer, Darren Mack, who testified that he found blood on the dog’s head, but not on the collar the day of the | ¿incident. He took the animal to the Jefferson Parish Animal Shelter for confinement.
Elizabeth Van Dyke, a veterinarian from the Prytania Veterinary Hospital in New Orleans who made an evaluation of the dog, testified she accompanied Mr. Parker on a visit with Bacon one afternoon. The dog appeared friendly, relaxed and healthy, and wagged his tail when Dr. Van Dyke arrived for the evaluation. He was wagging his tail, jumping up and down, and seemed excited. An employee of the facility removed Bacon from his cage and put him in a fenced area used for presentation of dogs for potential adoption. He was on a leash attached to a metal tie line to restrict his movement. Initially, Bacon was wagging his tail and eager to interact with people. However, Dr. Van Dyke testified that when a doll was presented to him, Bacon “definitely gave a very excited and aggressive reaction to the doll, and actually busted through the line to attack the doll.”
Mr. Parker testified that he acquired Bacon as a pet when the dog was about six-weeks-old, and that Bacon was about one-year-old at the time of this incident. Bacon is an inside pet who travels with his owner and has never bitten anyone before. He was in Metairie on business and was staying at the La Quinta. Mr. Parker was not at the hotel when the incident happened.
After the incident Mr. Parker went to visit Bacon at the animal shelter. Bacon was cowered down, until the pen was open and he recognized his owner, then Bacon was excited and happy. Mr. Parker stated that Bacon look “very poorly.” He was loosing some hair, he had kennel cough and he “had sores on his elbow areas on a couple of his legs.” Mr. Parker did not think Bacon was being properly cared for in the shelter.
| BMr. Parker testified that he accompanied Dr. Van Dyke when she went to the shelter to evaluate Bacon. He stated that Bacon did not act aggressively and, although he did break the chain, it was weak and easily broken.
After hearing the evidence, the trial judge rendered judgment affirming the judgment of the Mayor’s Court, finding that Bacon is “determined to be and is declared to be dangerous, fierce and vicious as defined by the Kenner Code of Ordinances, Chapter 4, Section 83 et seq.” After making that finding, the trial court *482 ordered Bacon to be “euthanized in a humane matter as quickly as possible, after any delays provided by law have elapsed.”
Defendant’s first two assignments of error present the question of whether the Louisiana Code of Evidence rules apply to a trial de novo in this case. At the beginning of trial, there was a discussion of the nature of the de novo trial. The animal control officers objected to the de novo trial, arguing that consideration of the appeal should be done by a review of the record. Defendant argued that he moved for, and was granted, a trial de novo. Because there was no transcript of the may- or’s court proceeding, the trial judge proceeded with the de novo trial.

SCOPE OF REVIEW

We are confronted first with whether the scope of review in the district court from a ruling of the mayor’s court is on the record only and whether the judge in the mayor’s court was capricious and arbitrary, or whether the hearing in the district court involves a de novo one.
Defendant claims under La. R.S. 13:1896[1] a de novo hearing is required.
| (¡Plaintiff, on the other hand, claims that La. R.S. 33:441.1 C[2] authorizes the may- *483 or’s court to make a determination on the issue in this case, that La. R.S. 33:441.1 C is controlling and does not require a de novo trial. Therefore, plaintiff maintains the review in the district court should have been on the record. We reject plaintiffs argument in this case.
There is no record of the testimony in the mayor’s court and we conclude in reliance on La. R.S. 13:1896, and particularly under the circumstances of this case, the district court judge properly conducted a de novo hearing in this matter.
Defendant argues that he made a continuous objection to the judge’s use of more lax administrative rules in the de novo trial, that argument was made in pre-trial proceedings not available for review. Nonetheless, during the trial defendant |7did object occasionally, indicating his objection was continuous. We find that is sufficient to preserve the matter for our review on appeal.
It appears defendant seeks reversal of the trial court’s judgment based on a general objection to the evidentiary rules applied by the trial judge.
Twice during the trial, defendant reasserted his objection to the use of administrative, rather than district court rules of procedure; first in his objection to the qualification as expert granted to Ms. Doyce Vallee, and second, in his argument supporting his motion for “acquittal for Bacon” at the close of plaintiffs case. The thrust of the portion of the argument related to the hearsay testimony offered by the victim’s mother regarding what the child told her. However, defendant does not present any argument regarding the prejudicial effect these decisions had on the final judgment.
Defendant argues the trial judge erred in “consistently allowing” hearsay testimony to be introduced by the attorney for the City of Kenner under the allegation that the trial de novo was an administrative hearing. However, defendant does not cite any specific hearsay evidence that was allowed, over objection, to his disadvantage. Although there is a vague reference in defendant’s argument to the testimony of Ms. Gordon about what Cara said to her immediately after the incident, there is no specific testimony presented as error for our review. Even assuming this testimony was improperly introduced, we fail to see how the admission of this testimony would prejudice defendant, especially in view of the other testimony offered at trial.
The other evidentiary ruling of which defendant complains relates to the qualification of Doyce Vallee as an expert. The transcript shows that plaintiff presented Ms. Vallee as an expert in animal behavior. However, after the voir dire the trial judge found that Ms. Vallee did not have the expertise or training to be |Rqualified as an expert in animal behavior. The trial judge limited Ms. Vallee’s testi *484 mony to the narrow issue of whether Bacon would be a suitable candidate to be released out into the public for adoption or otherwise, or whether he should be “put down.”
La.C.E. art. 702 provides as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
In regard to the acceptance of Ms. Val-lee as an expert, defendant argues the trial judge erred in failing to apply the guidelines of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In Daubert the U.S. Supreme Court said that the trial judge must ensure that the scientific testing admitted is not only relevant but also reliable. We acknowledge that Daubert was extended to include inquires into the admissibility of expert testimony other than scientific testimony. See; Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). However, the Kumho court also explained that the factors in Daubert are not mandatory, and are not necessary in every circumstance. Id. The ultimate decision on whether the factors of Daubert should be used rests with the trial judge. “Whether Daubert’s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine.” Kumho, 119 S.Ct. at 1176.
We find Merlin v. Fuselier Construction Company, Inc., 00-1862 (La. App.5/30/01), 789 So.2d 710 instructive in our consideration of this issue. In Merlin, the appellants argued that the trial judge erred in certifying a witness as an expert in roofing. The Merlin court noted that in Daubert “the United States Supreme | gCourt was concerned with determining the admissibility of new techniques as a basis for expert scientific testimony.” Merlin, 789 So.2d at 718. The trial judge has broad discretion in determining whether to admit or exclude expert testimony, and this Court will not overturn that decision absent a showing of an abuse of that discretion. Merlin, supra. Included in that discretion is the trial judge’s decision on whether Daubert’s specific factors are reasonable measures of reliability in a particular case. Kumho, supra; Merlin, supra.
In the matter before us, we find no abuse of the trial judge’s discretion to grant qualified expert status to Ms. Vallee. Ms. Vallee has worked with animals for over 25 years and her experience for the last five years is with the Jefferson Parish Animal Shelter. Her duties include assessing animals brought into the clinic for suitable treatment or adoption. She is a certified Louisiana animal control officer and she holds a certification for euthaniz-ing animals from Louisiana State University School of Veterinary Medicine. Given those qualifications, we find no abuse of discretion in the trial court’s evidentiary ruling.[3]
Defendant’s next assignment of error contends the evidence does not support the ruling of the trial judge affirming the decision of the mayor’s court.
It is well settled that in a civil case the plaintiff has the burden of proving his case, by a preponderance of the evidence, not by some artificially created greater standard. Lasha v. Olin Corp. 625 So.2d *485 1002, 1005 (La.1993). Proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not. Id.; Aguilar v. Transit Management of Southeast Louisiana, 04-1027 (La.App. 5 Cir. 3/1/05), 900 So.2d 65, 70-71.
|inIn the matter before us, the testimony shows that Bacon was in the motel room when the child was hurt. Although there are no witnesses to the actual incident, both adults in the room heard her scream and saw the injury to her forehead. Ms. Gordon, the child’s mother, testified that Bacon acted aggressively toward the child and that she and Ms. Parker had to “pull” Bacon away from the child.
There is also testimony that Bacon exhibited aggressive behavior, especially when confronted with a doll.
Considering the evidence in this matter, we cannot conclude that the trial judge’s finding of fact, and ultimate determination that Bacon is “dangerous, fierce and vicious” is in error.
Defendant’s final assignment of error relates to the incomplete transcript filed with the original appeal. Bécause some of the missing testimony was that of the defendant, this Court ordered the parties to enter into a narrative of the testimony. However, the record before us has been supplemented with the complete transcript, and we have rescinded the order to the parties. Since, we have considered the entire transcript in this appeal, this assignment is moot.
For the foregoing reasons the judgment of the trial judge is affirmed.

AFFIRMED.

. A. Mayor’s courts and justice of the peace courts. (1) In criminal cases, the district courts have appellate jurisdiction over all appeals from orders of justices of the peace requiring a peace bond, and, except as otherwise provided by law, over all appeals from a mayor’s court where a person has been subjected to imprisonment or a forfeiture of rights or property. Appeals from mayor's courts and justice of the peace courts, as provided for herein, shall be tried de novo. Any forfeiture or penalties collected by the district court on appeal from a conviction of a municipal ordinance shall be distributed and disbursed to the municipality.
(2) Appeals in all criminal cases tried in mayor’s courts and from orders of a justice of the peace requiring a peace bond shall be taken within the time prescribed in the Louisiana Code of Criminal Procedure.
(3) When an appeal has been taken under the provisions of this Section from a decision rendered in a mayor's court or in a justice of the peace court, the district court shall provide written notice of the appeal to the may- or’s court or the justice of the peace court. The date on which the appeal is set for hearing shall not be not less than fifteen days after the notice is mailed by the district court. The notice shall include the date, time, and location of the hearing of the appeal.
B. City, parish and municipal courts. Review or appeal of a judgment in any criminal case tried under a state statute in city, parish or municipal courts shall be provided in Article 912.1 of the Louisiana Code of Criminal Procedure. Review of a judgment in any other criminal case tried in a city, parish or municipal court shall be by appeal to the district court of the parish in which the court of original jurisdiction is located, except in those cases which are appealable to the Supreme Court under the provisions of the Constitution. These appeals shall be on the law alone.
C. Return of appeals. Appeals to the supreme court shall be returnable within not less than fifteen days nor more than sixty days after the order of appeal. Appeals to the district courts shall be returnable within not less than fifteen days nor more than thirty days after the order of appeal.

. C. (1) The office of animal hearing officer of the mayor’s court of the city of Kenner is hereby created. The city council of the city of Kenner shall, upon request of the mayor, appoint an animal hearing officer for the court as provided in this Subsection.
(2) The animal hearing officer shall be selected by the city council to serve at the pleasure, discretion, and direction of the council for a period of twelve months. He may be reappointed.
(3) The animal hearing officer shall possess the same qualifications for office as a magistrate for the mayor's court of the city of Kenner.
(4) The magistrate of the mayor's court may also be appointed as the animal hearing officer, and such appointment shall not constitute dual officeholding.
(5) The salary of the animal hearing officer shall be set by the city council. If the magis *483 trate of the mayor’s court is appointed animal hearing officer, there shall be no additional compensation beyond the compensation provided for the magistrate.
(6) An animal hearing officer may engage in the practice of law and in any other business, occupation, or employment not inconsistent with the expeditious, proper, and impartial performance of his duties as -animal hearing officer. Any questions regarding the propriety of other business, occupation, or employment by an animal hearing officer shall be determined by the appointing city council.
(7) The animal hearing officer shall have criminal jurisdiction over violations of municipal ordinances relating to crimes involving nuisance and vicious or dangerous animals committed within the territorial boundaries of the city of Kenner. Additionally, the animal hearing officer shall have the authority to declare any animal vicious, dangerous, or to determine the disposition of the animal, in-eluding humane euthanasia, if warranted.

. The American Canine Foundation filed an Amicus Curiae brief in which it argues Ms. Vallee was not qualified to offer testimony regarding Bacon's temperament.