STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-175

SUCCESSION OF ROBERT EDWARDS SR.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 47,186
HONORABLE TODD S. CLEMONS, JUDGE PRO TEMPORE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and J. David Painter, Judges.

**AFFIRMED.**

**Painter, J., dissents and assigns written reasons.**

Timothy O'Dowd
Attorney at Law
921 Ryan St., Suite D
Lake Charles, LA 70601
Counsel for Appellee:
     Anita Dejean

Robert Michael McHale  Jr.
Attorney at Law
631 Kirby Street
Lake Charles, LA 70601
Counsel for Appellant:
     Mary Audrey Edwards

**PICKETT, J.**

Mary Audrey Edwards, the wife of the decedent, Robert (NMI) Edwards Sr., appeals a judgment of the trial court denying her petition to probate the purported last will and testament of her husband and finding that testament, which was executed on June 8, 2007, null and void for lack of the decedent's capacity to execute the same. We affirm the judgment of the trial court.

## FACTS

Robert Edwards Sr. died on January 12, 2008. On January 28, 2008, his daughter Anita Dejean, filed a petition to be named administratrix of her deceased father's succession. In her petition, she noted that a will in the name of "Robert Edwards" had been filed in the records of Calcasieu Parish but had not been presented for probate. She prayed to be named administratrix "on information and belief the decedent died intestate." On January 30, 2008, Ms. Dejean filed a document in the succession proceeding captioned "Opposition to the Probate of the Purported Last Will and Testament of Robert Edwards Dated June 8, 2007." In the "opposition" document, Ms. Dejean stated three grounds for the basis of her opposition: 1) that at the time the will was executed, the decedent lacked the capacity to perfect a will; 2) that the purported will was the result of undue influence on the part of Mary Audrey Edwards, the decedent's then wife; and/or 3) that the signature on the purported will is not that of the decedent.

Mary Audrey Edwards, the widow of the deceased, filed a "Petition for Probate of Statutory Testament and Appointment of Executrix and Opposition to Petition for Homologation of Final Account."

1

In due course, on October 16, 2008, a hearing was held to hear arguments on the issues raised by the parties in their respective filings. Following the hearing, the trial court found that the purported will executed on June 8, 2007, was null and void for the decedent's lack of comprehension (mental acuity) at that time. This appeal followed.

## LAW AND ARGUMENT

On appeal, Ms. Edwards lists three assignments of error:

1. The trial judge erred and committed manifest error in admitting the testimony, over timely objections, of a psychiatrist as an expert in the field of "psychological autopsy" even though the doctor had never seen or examined and ultimately based his opinions on subjective information from partial medical records, which he admitted were inconsistent.

2. The trial judge committed manifest error in ignoring the testimonies of five disinterested parties, including, the attorney who drew up the will, a long time friend who sat with the testator on a daily basis, and three medical professionals who treated the testator.

3. The trial judge was clearly wrong in concluding that the testimony of the psychiatrist and the testator's daughter proved by clear and convincing evidence that the testator was incapacitated.

"The trial court is accorded vast discretion concerning the admission of evidence, and its decision will not be reversed on appeal absent an abuse of that discretion." *McIntosh v. McElveen*, 04-1041, pp. 9-10 (La.App. 3 Cir. 2/2/05), 893 So.2d 986, 994, *writ denied*, 05-528 (La. 4/29/05), 901 So.2d 1069; citing *Maddox v. Omni Drilling Corp.*, 96-1673 (La.App. 3 Cir. 8/6/97), 698 So.2d 1022, *writs denied*, 97-2766, 2767 (La. 1/30/98), 709 So.2d 706.

Concerning the admissibility of expert testimony, the Louisiana Supreme Court has stated:

Admissibility of expert testimony in Louisiana is governed by La.Code of Evid. art. 702, which provides as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the

2

evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The above article follows Fed. Rule of Evid. 702, according to Official Comment (b) (1988) to La.Code of Evid. art. 702. A district court is accorded broad discretion in determining whether expert testimony should be held admissible and who should or should not be permitted to testify as an expert. Official Comment (d), citing 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02] (1981). *See also Merlin v. Fuselier Const., Inc*. 2000-1862, p. 12 (La.App. 5 Cir. 5/30/01), 789 So.2d 710, 718 ["Whether an expert meets the qualifications of an expert witness and the competency of the expert witness to testify in specialized areas is within the discretion of the trial court."] A district court's decision to qualify an expert will not be overturned absent an abuse of discretion. *Id.*; *State v. Castleberry*, 1998-1388 (La.4/13/99),758 So.2d 749, 776.

In *Daubert*, the United States Supreme Court set a new standard to assist district courts in evaluating the admissibility of expert testimony. The new standard required the district courts to perform a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589, 113 S.Ct. 2786. *See also State v. Chauvin* 2002-1188 (La.5/20/03), 846 So.2d 697, 700-01. In *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the United States Supreme Court held that the analysis established by *Daubert* is to be applied to determine the admissibility of all expert testimony, not just scientific testimony. *Merlin*, 2000-1862 at p. 12, 789 So.2d at 718. The *Kumho Tire* case dealt specifically with the issue of whether *Daubert* applies to engineering expert testimony. 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238.

*Daubert* established the following non-exclusive factors to be considered by district courts to determine the admissibility of expert testimony:

(1) The "testability" of the scientific theory or technique;

(2) Whether the theory or technique has been subjected to peer review and publication;

(3) The known or potential rate of error; and

(4) Whether the methodology is generally accepted in the scientific community. *Daubert*, 509 U.S. at 592-94, 113 S.Ct. 2786. This court in *Foret* characterized the *Daubert* factors as "observations" which provide

a "helpful guide for our lower courts in considering this difficult issue." 628 So.2d at 1123.

*Cheairs v. State, Dep't of Transp. and Dev.*, 03-680, p. 6-7 (La. 12/3/03), 861 So.2d 536, 540-41.

In her first assignment of error, the appellant argues that the trial judge erred in admitting the testimony of Dr. James M. Anderson who performed a psychological autopsy of the decedent by examining his medical records, the wills executed by the decedent and by the appellant, and the depositions of various parties involved in this proceeding. Dr. Anderson stated that, for the purpose of determining competency to execute a will, he *concentrates* on the date the will was confected, June 8, 2007, and on the period of time prior to that date—in this case from May 8 to June 4, 2007—when the decedent was treated in the rehabilitation facility, and the period from the decedent's discharge to the date the contested will was confected. He also reviewed the decedent's medical records prior to May 8, 2007. He concluded that Mr. Edwards lacked testamentary capacity on June 8, 2007.

We find this case very similar to the situation in *Succession of Pardue*, 40,177 (La.App. 2 Cir. 11/8/05), 915 So.2d 415, *writ denied*, 06-215 (La. 4/28/06), 927 So.2d 284, wherein a universal legatee appealed the trial court's decision nullifying a 2002 will, finding that Jo Green Pardue, the decedent, lacked testamentary capacity when she executed that notarial will. Charles Platt, the universal legatee, argued that the trial court erred in admitting the expert testimony of Dr. Paul Ware who used the psychological autopsy method to determine the decedent's competency at the time she confected the contested will. In finding Dr. Ware's testimony was properly admitted, the trial court stated:

We note that Dr. Seiden testified that the psychological autopsy method has been described and validated in a number of peer reviewed psychiatric journals. The record shows that Dr. Ware . . . reviewed medical records and witness depositions and statements in reaching [his] conclusions regarding Pardue's testamentary capacity. Thus, since the technique employed by Dr. Ware was substantially the same as the psychological autopsy method, which is generally accepted in the psychiatric field, the trial court could reasonably have found that Dr. Ware's methodology was sufficiently reliable under the *Daubert* standard. Consequently, we cannot say the trial court abused its discretion in admitting Dr. Ware's expert testimony. The assignment of error lacks merit.

*Pardue*, 915 So.2d at 421.

As the court did in *Pardue*, we find that the trial court did not err in admitting Dr. Anderson's testimony. Thus, the appellant's first assignment of error is without merit.

In her second assignment of error, the appellant argues that the trial court "committed manifest error in ignoring the testimonies of five disinterested parties, including, the attorney who drew up the will, a long time friend who sat with the testator on a daily basis, and three medical professionals who treated the testator." The standard of review applicable to this assignment of error has been firmly established.

It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous--clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.

> When findings are based on determinations regarding the credibility of witnesses, the manifest error--clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

*Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989) (citations and footnote omitted).

The appellant's second assignment of error relies on "the testimonies of five disinterested parties." The first of those parties is David F. Dwight, the attorney/notary who prepared the contested document. The contested will consists of one page and is in statutory form and leaves the testator's "entire estate" to his wife, the appellant herein. In his deposition, Mr. Dwight stated that the document was prepared at the instructions of Mrs. Edwards and that he did not receive any instructions from Mr. Edwards. When asked specifically about the trip to the Edwards's house to execute the will, Mr. Dwight stated that he was there about five to ten minutes, that Mr. Edwards did not verbalize anything, and that he smiled, nodded and shook his head. As the trial court stated, Mr. Dwight never said he discussed any options concerning the disposition of property with Mr. Edwards. In fact the court stated: "I think the reason he didn't discuss that is because Mr. Edwards wasn't in the position to have that conversation." In fact Mr. Dwight admitted that he had no conversation with Mr. Edwards.

As to David Loyd, he testified that he did not visit Mr. Edwards from the time he was hospitalized in March 2007 until sometime after he got home in June. He

stated that he did not find out Mr. Edwards was home until he got a phone call from Martha Simmons, Mr. Edwards' sister-in-law, informing him that Mr. Edwards was home; however he could not be sure exactly when she called. Accordingly, Mr. Loyd's testimony is of little help in determining Mr. Edwards capacity to donate at the time the contested will was confected.

Yvonner Ceasar, a certified nurses' aid, attended Mr. Edwards from June 6, 2007, till he died in January 2008. She stated that the first time she came to the house, Mr. Edwards was confined to bed and that it wasn't until he received some physical therapy that he was able to get out of bed. She admitted that he had trouble communicating, verbalizing only such things as "yeah," "uh-huh," "hmm-mm," and "no." She noted that he could not say "yes." She also stated that at times he was incontinent and couldn't remember his last bowel movement. Once again, this testimony is of little help in determining if Mr. Edwards had testamentary capacity on June 8, 2007.

Pamela Buller, Mr. Edwards' physical therapist, also did not see Mr. Edwards until after he was discharged to his home. She could not remember the first time she saw him. She stated that Mr. Edwards could follow her commands during therapy, that he could not verbalize, but that he appeared to be oriented to time and place. Here too, her contact with the decedent didn't begin until after the contested will was executed, making it of little value.

Finally, Holly Lemoine, R.N., who was Mr. Edwards' home health nurse testified that she, too, didn't start treating Mr. Edwards until after he was discharged to home. She stated that when she went to the home to complete the paper work to enroll Mr. Edwards into home health, he could not sign the papers. She remembered

7

that he could not verbalize and that, although he appeared alert, he was not oriented to the time of day. She stated that between the time he was admitted to home health to just before his death, his cognitive ability improved. Ms. Lemoine visited two to three times a week for fifteen to thirty minutes a visit. The most relevant portion of her testimony was that on her initial assessment of Mr. Edwards on June 5, 2007, she listed Mr. Edwards as having "impaired decision-making."

The appellant's third assignment that "[t]he trial judge was clearly wrong in concluding that the testimony of the psychiatrist and the testator's daughter proved by clear and convincing evidence that the testator was incapacitated," is clearly mis-stated. In reaching a decision on the testamentary capacity of the decedent, the trial court must consider *all* the evidence and testimony in the record just as we must do in reviewing the trial court's judgment.

Our review of the record reveals the following. In 2000, Mr. Edwards suffered a cerebrovascular accident which resulted in right-sided hemiparesis. Thereafter, in March 2007, he suffered a subdural hematoma which required evacuation. This procedure left him with an increased right-sided hemiparesis, post-operative seizures, and a lower left extremity deep-vein thrombosis (DVT). Mr. Edwards developed aspirational pneumonia which as successfully treated with antibiotics. In April of 2007, he had a percutaneous endoscopic gastrostomy to place a feeding tube (a PEG tube), and approximately two weeks later, an inferior vena cava (IVC) filter was inserted as a precaution against possible complications from his DVT.

In May 2007, he was transferred to the acute rehabilitation unit at Lake Charles Memorial Hospital (L.C.M.H.)where he remained until he was discharged to his home on June 4, 2007, just four days before he allegedly confected the contested will.

8

Accordingly, his condition during his stay at L.C.M.H. is much more relevant to his testamentary capacity on June 8, 2007, than his condition later in June and through December 2007. On May 15, 2007, his weekly progress summary from the records at L.C.M.H. indicate the following (emphasis ours): *"All information is given by the wife.* Patient is aphasic and dysarthric and *unable to effectively communicate 90% of the time* in therapy. However, patient is following *one-step* commands approximately 85% of the time." The May 15, 2007 Transdisciplinary Treatment Plan estimates Mr. Edwards's ability to follow one-step commands at 80% and states: "Two-step and three-step commands were 0%." Further, the document states: *"Reading comprehension is nonfunctional."* The report of May 22, 2007, remains basically unchanged, except that Mr. Edwards appears to have increased his compliance to *one-step* commands to 90%; barriers to discharge are "dysarthria, expressive/receptive language deficits, cognition and dysphagia. The last progress report, from May 29, 2007, contains NO assessment of Mr. Edwards's communication or reading ability or of his compliance to commands.

Anita Dejean, Mr. Edwards's daughter, testified that at no time during her father's confinement to L.C.M.H. could she have meaningful communication with him. She visited him three to four times a week during his hospitalization and after he got home. She stated that her nephew was graduating from high school in California and that the week before (the week of June 7, 2008) she left for the graduation, she visited her father every day. Ms. Dejean stated that at no time during that period could she have meaningful communication with her father. She further testified that before her father's illness, she had helped him with his business affairs and that at no time had he mentioned his intent to make a new will.

We have considered the extent of injury to Mr. Edwards's brain from the hematoma and from the treatment necessitated thereby; the medical records from L.C.M.H.; the testimony of Dr. James Anderson, who performed the "psychological autopsy" and who concluded that Mr. Edwards lacked testamentary capacity on June 8, 2007; and the testimony of Anita Dejean. Based upon the forgoing, we cannot say that the trial court was clearly wrong in concluding that the mover-in-rule, Anita Dejean, carried her burden of proving, by clear and convincing evidence, that her father, Robert Edwards, lacked testamentary capacity to execute a will on June 8, 2007.

Accordingly, for the reasons stated, the judgment of the trial court is affirmed. Al costs of this appeal are assessed against defendant-in-rule, Mary Audrey Edwards.

**AFFIRMED.**

NUMBER 09-175

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

SUCCESSION OF ROBERT EDWARDS, SR.

PAINTER, J., dissenting.

I respectfully dissent from the majority's opinion the June 8, 2007 will of Robert Edwards, Sr. Was null and void for the decedent's lack of comprehension (mental acuity) at the time of its execution. In affirming the trial court's decision to find the will invalid, the majority finds no error in the admission of the testimony of Dr. James M. Anderson. Dr. Anderson performed a psychological autopsy of the decedent. This "autopsy" consisted of the review of medical records, the wills executed by the decedent and his widow, and the depositions of several witnesses including Mary Audrey Edwards, the decedent's widow, and David Dwight, the attorney who prepared the will. The majority concludes Dr. Anderson's testimony meets the requirements of La.Code of Evid. Art. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993). Therefore, the majority finds no abuse of the trial court's discretion in the admission of Dr. Anderson's testimony. I respectfully disagree.

While recognizing that the second circuit, in *Succession of Pardue*, 40,177, p. 7 (La.App. 2 Cir. 11/8/05), 915 So.2d 415, 421, *writ denied*, 06-215 (La. 4/28/06), 927 So.2d 284, has found that the psychological autopsy method has been "described and validated in a number of peer reviewed psychiatric journals," I do not share the opinion that Dr. Anderson's review in this case was sufficient. Dr. Anderson himself testified that there are no established guidelines for the performance of a psychological autopsy. Furthermore, Dr. Anderson based his opinions on incomplete medical records which he admitted were inconsistent and did not speak to Mr.

Edwards' family or caregivers.  Accordingly, I do not agree that Dr. Anderson's testimony met the requirements of *Daubert*.  Therefore, I would reverse the trial court's ruling and find the will valid.