Judgment rendered August 27, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,429-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

LATASHA T. SHERMAN                               Plaintiff-Appellant

versus

TERRI ANDERSON-SCOTT                            Defendants-Appellees
BAR #14889 AND LEGAL AID
OF NORTH LOUISIANA (A
DIVISION OF ACADIANA
LEGAL SERVICE CORP.)

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 637,058

Honorable Ramon Lafitte, Judge

* * * * *

LATASHA SHERMAN                                  In Proper Person


GIBSON LAW PARTNERS, LLC                         Counsel for Appellees
By: Alan W. Stewart
    James H. Gibson

* * * * *

Before THOMPSON, ROBINSON, and ELLENDER, JJ.

**ELLENDER, J.**

Latasha Sherman appeals a judgment that sustained an exception of peremption and dismissed all her claims against Terri Anderson-Scott and Acadiana Legal Service Corporation as untimely. We affirm.

## PROCEDURAL HISTORY

In early 2020, Sherman was a tenant in a house on Mackey Lane, in Shreveport, receiving a subsidy under Section VIII of the Fair Housing Act. Her lease had expired on April 30, 2019, but she remained in the house under a lease provision for month-to-month reconduction as long as the tenant remained on the property. Under the monthly reconduction, either party could end the lease by giving 15 days' notice.

On March 16, 2020, the lessor notified Sherman it would not renew the lease at the end of that month and demanded she vacate the premises by April 30. Because of the COVID-19 pandemic and stay-at-home orders, however, the lessor extended this to August 31. The lessor filed an initial petition to evict which Shreveport City Court denied as premature. However, it filed a second petition to evict, this time alleging adequate notice under the reconducted lease.

According to her "complaint," Sherman hired Anderson-Scott to defend her in the second eviction matter. The case went to a hearing on September 9, 2020; the City Court rejected Sherman's affirmative defenses and granted the eviction. Sherman appealed, but this court affirmed. *CP Comm'l Props. LLC v. Sherman*, 53,897 (La. App. 2 Cir. 4/14/21), 53,897 (La. App. 2 Cir. 4/14/21), 318 So. 3d 445, *writ not cons.*, 22-00022 (La. 2/22/22), 333 So. 3d 445.

Acting pro se, Sherman filed this suit (styled a "complaint") against Anderson-Scott and Acadiana on May 13, 2022. She alleged that Anderson-Scott committed acts of negligence or malpractice in that she failed to communicate with the client, learn the facts, return the case file when requested, and generally lacked adequate knowledge of Title VIII housing.[1] An attachment to the complaint was an email she sent to Anderson-Scott on May 15, 2021, saying, "You messed up my case and you never fought for me." Sherman applied for, and received, pauper status.

The case took a circuitous route, including an attempt by Sherman to remove her own case to Federal District Court.[2] She also had recurrent disputes with the clerk of the First Judicial District Court over deferment of costs for her pro-se filings.

Crucial to this appeal, Anderson-Scott filed an exception of peremption, under La. R.S. 9:5605. This contended the Second Circuit denied Sherman's appeal on April 14, 2021, a fact which should have alerted her to potential malpractice, but she did not sue until May 13, 2022, over one year later.

In a supplemental complaint, Sherman alleged Anderson-Scott was "fully aware of the error on May 2, 2021, May 6, 2021 on or around May 11, 2021 and May 15, 2021," as shown by emails from Sherman on those dates.

---

[1] She also prayed for damages of $22 million, a violation of La. C.C.P. art. 893 (A)(1). Anderson-Scott filed a motion to strike, which the district court granted allowing Sherman 45 days to amend. Sherman amended but again prayed for damages, only $2 million this time; after a second motion to strike, she agreed to withdraw the claim for a specific amount of damages.

[2] *Sherman v. Anderson-Scott*, 2022 WL 4295409 (W.D. La. July 27, 2022), *report & recommendation adopted*, 2022 WL 4295354 (W.D. La. Sept. 15, 2022).

After several continuances, trial was held on July 31, 2023.  The court asked Sherman, "So you felt something was wrong before May 11th?"  Sherman responded, "I felt it, yes."  At the close of evidence, the court granted five days for additional briefing.

At a posttrial hearing on September 14, 2023, the court stated it had received the briefs and concluded Sherman's suit was filed too late.  It rendered judgment sustaining Anderson-Scott's exception of peremption and dismissing all claims at Sherman's cost.  Still acting pro se, Sherman took this appeal.  She designated four assignments of error.

## DISCUSSION

### *Application of Peremption*

By her first assignment of error, Sherman urges the trial court "erred in ruling not using [*sic*] Contra Non Valentem or Equitable Tolling."  She concedes that the trial court's factual findings are subject to manifest error review, *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989), but argues that an erroneous interpretation or application of the law is entitled to no such discretion, *Conagra Poultry Co. v. Collingsworth*, 30,155 (La. App. 2 Cir. 1/21/98), 705 So. 2d 1280.  She contends that prescription does not run against a person unable to bring suit, *Corsey v. State*, 375 So. 2d 1319 (La. 1979).  Although she picked up her file from Anderson-Scott on May 11, 2021, she argues she did not discover the "fraudulent acts" until May 15, 2021.  In support, she asserts she was "harassed, and bullied by Mary Winchell," to set up another court date, on May 19, 2021.[3]  She argues

---

[3]  The role of Mary Winchell, and the significance of trying to continue a trial, are not apparent from the record, aside from several pages of pleadings and attachments for which no evidence was offered.

prescription does not run "until plaintiff has knowledge of both the tort and the result in [*sic*] damages," and contends that Anderson-Scott backdated correspondence and withheld key discovery responses until the prescriptive period ended.[4] She also contends her "mental health impairment" qualified her for a suspension of prescription, citing *Succession of Wallace*, 574 So. 2d 348 (La. 1991), and asserts that her medical records "mysteriously disappeared" from the record.[5]

The factual findings of the district court are indeed subject to manifest error review: the appellate court cannot disturb such a finding unless, after a review of the entire record, the court finds a "reasonable factual basis does not exist for the finding" and, further, that the finding is "clearly wrong." *Barber Bros. Contracting Co. v. Capitol City Produce Co.*, 23-00788 (La. 6/28/24), 388 So. 3d 331.

Actions in legal malpractice are subject to a peremptive period of one year:

### § 5605. Actions for legal malpractice

A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall

---

[4] As with the points noted in the previous footnote, Sherman offered no evidence to support these claims.

[5] This is another "factual" claim that is devoid of record support.

4

be filed at the latest within three years from the date of the alleged act, omission, or neglect.

The courts have consistently interpreted this as a peremptive period starting from the date of discovery. Discovery means when a claimant knew or should have known of the existence of facts that would have enabled him to state a cause of action for legal malpractice. *Teague v. St. Paul Fire & Marine Ins. Co.*, 07-1384 (La. 2/1/08), 974 So. 2d 1266. The discovery rule applies regardless of when the damage was actually incurred and is not suspended by continuous representation. *Nicholas v. Bonnie*, 23-01250 (La. 5/31/24), 385 So. 3d 1130.

An admission by a party in a pleading constitutes a judicial confession and is full proof against the party making it. La. C.C. art. 1853; *1026 Conti Holding LLC v. 1025 Bienville LLC*, 22-01288 (La. 3/17/23), 359 So. 3d 930; *McCormick v. Wilhite*, 55,606 (La. App. 2 Cir. 5/22/24), 386 So. 3d 1250.

This record provides no basis for a finding of manifest error. The following events stand out in the record:

**September 9, 2020:** Sherman emailed Anderson-Scott to say she did not receive a fair trial (email attached to Sherman's amended complaint)

**December 26, 2020:** Sherman emailed Anderson-Scott to say she was "not properly served" in connection with the eviction matter (also attached to her amended complaint)

**December 31, 2020:** Sherman emailed Anderson-Scott to complain about her lack of communication, failure to follow Section VIII guidelines, and her "lower standards of giving me justice" (also attached to her amended complaint)

**April 14, 2021:** Sherman lost her appeal in the eviction matter; she alleged that she phoned Anderson-Scott that day and complained that she "fail[ed] to convey to Plaintiff her legal responsible [*sic*]" (allegation in her amended complaint)

**April 16, 2021:** Sherman held a three-way call with Anderson-Scott and another attorney to complain about Anderson-Scott's representation (allegation in her amended complaint)

**April 22, 2021:** Anderson-Scott wrote a letter to Sherman advising that the attorney-client relationship was terminated (attachment to amended complaint)

**May 11, 2021:** Sherman received her case file from Anderson-Scott (allegation in her amended complaint)

**May 11, 2021:** Sherman "felt" there was something wrong with Anderson-Scott's handling of the eviction case (testimony at trial)

Simply put, *any one of these events* will constitute actual or constructive knowledge of the existence of facts that would have enabled Sherman to state a cause of action for malpractice. *Teague v. St. Paul Fire & Marine Ins. Co.*, *supra*. The ones incorporated into her amended complaint and her testimony at trial constitute judicial confessions of knowledge on the dates stated. *1026 Conti Holding LLC v. 1025 Bienville LLC*, *supra*. *All these events* occurred over one year before the filing of the original complaint, May 13, 2022. The district court's findings are not manifestly erroneous. In fact, the record will support no other conclusion than that Sherman missed the peremptive period. This assignment of error lacks merit.

### *Proof of Fraud*

By her second assignment of error, Sherman urges the trial court "erred in not allowing the defendants to answer the fraud, concealment and termination allegations." The body of the argument, however, contends that the trial court did not allow *the plaintiff* to present her evidence of misrepresentations, fraud, and concealment. In support, she cites the definition of fraud, La. C.C. art. 1953, and *Becnel v. Grodner*, 2007-1041 (La. App. 4 Cir. 4/2/08), 982 So. 2d 891. She argues that she "lost her

6

housing, lost her liberty and her freedom to travel," and asks the court to look "Behind the corruption here."

Fraud is, indeed, a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. C.C. art. 1953; *Lomont v. Bennett*, 14-2483 (La. 6/30/15), 172 So. 3d 620. The failure to perform as promised, or nonperformance of an agreement to do something at a future time, is not, by itself, evidence of fraud. *Taylor v. Dowling Goslee & Assocs. Inc.*, 44,654 (La. App. 2 Cir. 10/7/09), 22 So. 3d 246, *writ denied*, 09-2420 (La. 2/5/10), 27 So. 3d 299.

As for Sherman's assigned error, there is no evidence that the district court prohibited *Anderson-Scott and Acadiana* from answering the allegations of fraud; had this occurred, those parties would have alleged some deprivation of rights, but they did not. Further, there is nothing in the record to suggest that the court prohibited *Sherman* from presenting evidence of fraud. On the contrary, a fair reading of the record is that Sherman made many allegations, but when she came to court, she offered no proof. This assignment is devoid of merit.

### *Access to the Court*

By her third assignment of error, Sherman urges the court "erred in not allowing plaintiff access to the court according to the Constitution." She cites the right of access, La. Const. art. I, § 22, and argues that procedural rulings cannot impede this right. *Garner v. Lizana*, 13-427 (La. App. 5 Cir. 12/30/13), 131 So. 3d 1105, *writ denied*, 14-0208 (La. 4/4/14), 135 So. 3d 1183. She contends the district court refused to entertain her timely

7

motions, declined to set a reasonable briefing schedule despite repeated requests, and refused her requests to review the court minutes.

All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights. La. Const. art. I, § 22; *Welch v. United Med. Healthwest-New Orleans LLC*, 24-00899 (La. 3/21/25), 403 So. 3d 554. The constitutional guarantee of access to courts and a remedy for injuries does not warrant a remedy for every single injury. *Whitnell v. Silverman*, 95-0112 (La. 12/6/95), 686 So. 2d 23; *Crier v. Whitecloud*, 496 So. 2d 305 (La. 1986).

The record is clear that Sherman's trial was continued multiple times, at her own request, but it eventually occurred, on July 31, 2023. Sherman appeared and testified, and the court granted additional time for briefing, which Sherman utilized. Sherman also appeared at the subsequent hearing, on September 14, 2023. On this procedural history, any suggestion that Sherman was denied access to the court is incorrect. For the reasons already discussed, Sherman brought a malpractice claim; Anderson-Scott contended it was perempted; the matter was briefed and litigated, with the result of dismissal under R.S. 9:5605. Because her claim was extinguished, any further evidence that Sherman may have offered was irrelevant. This assignment lacks merit.

### *Plaintiff's Capacity*

By her fourth assignment of error, Sherman urges the court "erred for not considering plaintiff [*sic*] mental health and psychotic medication when he called Plaintiff 'reasonable.'" She contends the court showed

8

"impermissible bias" by deeming her reasonable, i.e., by venturing "beyond the judicial role and making lay psychiatric determinations without any expert evidence." She cites cases requiring expert testimony to establish competency of the testator in a will contest, *In re Succession of Edwards*, 2009-175 (La. App. 3 Cir. 6/3/09), 11 So. 3d 1234, *writ denied*, 09-1493 (La. 10/2/09), 18 So. 3d 112, and the determination of mental capacity to proceed in a criminal trial when the issue is raised, *State v. Perkins*, 00-9 (La. App. 5 Cir. 5/17/00), 759 So. 2d 334, *writ denied*, 00-1826 (La. 4/26/02), 813 So. 2d 1098. She concludes that because of her mental condition, the judgment should be reversed and the case remanded.

Except as otherwise provided by law, it is not necessary to allege the capacity of a party to sue or be sued; such procedural capacity shall be presumed, unless challenged by the dilatory exception. La. C.C.P. art. 855. A mental incompetent does not have the procedural capacity to sue. La. C.C.P. art. 684 (A).[6] To prove that a person is a mental incompetent for purposes of procedural capacity to sue, the party challenging competence is required to present evidence of an infirmity which makes the party consistently unable to make reasoned decisions regarding the care of her person and property, or to communicate those decisions. *Walcott v. La. Dept. of Health*, 2020-0611 (La. App. 1 Cir. 3/31/22), 341 So. 3d 696.

In filing this suit, Sherman obviously utilized the presumption that she had mental capacity to sue. In the course of the litigation, nobody

---

[6] As amended by 2025 La. Acts No. 250, Art. 684 (A) now provides, starting August 1, 2025: "A person fully interdicted or a person whose limited interdiction specifically restricts the procedural capacity to sue does not have the procedural capacity to sue." The amendment clarifies that a person in Sherman's situation would have to introduce a judgment of interdiction or limited interdiction if she wished to halt the civil suit she had already started.

9

challenged her mental capacity: not Anderson-Scott and Acadiana, by an exception of lack of procedural capacity, and not Sherman, by introducing evidence of an interdiction or a limited interdiction that restricted her capacity to sue. In short, there was no basis for the district court to find that Sherman lacked mental competence under Art. 684 (A). We perceive no legal error in the court's allowing her to litigate her suit and, ultimately, rejecting her claims.

The cases cited by Sherman in brief are not apposite. *State v. Perkins*, *supra*, addressed whether a criminal defendant who raises the issue of capacity to proceed may be convicted and sentenced without a determination of capacity. A special statute, La. C. Cr. P. art. 642, confers this right on a criminal defendant; there is no equivalent right for a civil plaintiff who has already exercised her right to sue. *Succession of Edwards*, *supra*, was a probate case in which the testator's daughter contested her father's alleged will on grounds of lack of capacity. In an evidentiary ruling, the court approved the use of a "psychological autopsy" over the testimony of lay witnesses, to find lack of capacity. The testamentary capacity of the deceased was placed at issue and fully litigated, unlike Sherman's alleged mental incompetence. These cases have no bearing on Sherman's claim.

This assignment of error lacks merit.

## CONCLUSION

For the reasons expressed, the judgment is affirmed. Latasha Sherman, who received pauper status in this case, is to pay all costs to the extent allowed by La. C.C.P. art. 5188.

**AFFIRMED.**

10