CLARENCE E. McMANUS, Judge.
 

 ^Plaintiff, Desiree Gonzales, filed suit for injuries received in a one car accident. Plaintiff filed suit against several defendants. At the time of trial, there were two defendants remaining, Louisiana Department of Transportation and Development (DOTD), and the Public Belt Railroad Commission of the City of New Orleans. (NOPB).
 

 The trial in this matter was bifurcated, with the claims against DOTD tried by a jury and the claims against NOPB tried by the judge. After trial both triers of fact, the judge and the jury, found in favor of their respective defendants. Accordingly, the trial court rendered judgment in favor
 
 *923
 
 of defendants, dismissing plaintiffs claims against them. For the reasons that follow, we affirm the judgment of the trial court.
 

 FACTS
 

 The accident at issue occurred in the early morning hours of September 19, 1998. Ms. Partain was driving a vehicle, plaintiff and two others were in the back seat and a fourth passenger was in the front. Ms. Partain drove her vehicle past the dead end of Labarre Road, over a set of railroad tracks and then over a canal. The front of the vehicle hit the other 14side of the canal, and the rear of the vehicle dropped into the water at the bottom of the canal.
 

 On the night in question, plaintiff and Ms. Partain first went to a daiquiri shop, and then to a party. At the party, Ms. Partain consumed two beers and two shots of tequila. They left the party with three males and three females, and Ms. Partain gave the females a ride home, somewhere on or near Deckbar Ave., off Jefferson Highway, in Jefferson Parish, Louisiana. It had been raining earlier and the streets were wet. Ms. Partain turned off Jefferson Highway, and onto Rio Vista Ave, with her goal being to get to Airline Highway. From Rio Vista Ave., she turned onto San Jose Ave., and then possibly onto San Carlos Ave. and ultimately onto Labarre Rd., two blocks from where it ended at the railroad tracks. Beyond the tracks was the Hoey Canal. Ms. Partain testified that she did not see a Dead End sign when she turned onto Labarre Rd., and if she had she would have turned off that street. She further testified that she did not see any signage to indicate that the road ended. She stated that she could see a red light at Airline Highway, and this visual led her to believe that the road went all the way through. She testified that she did not see a chain or a stop sign at the end of the road.
 

 The testimony of neighbors to the canal, as well as testimony from the DOTD indicated that the end of the road was normally secured with a chain stretched across the road, and a stop sign hanging from the chain. On the night of the accident and after the car came to rest on the opposite side of the canal, the chain was stretched across the hood of Ms. Partain’s car. The stop sign was not seen.
 

 After the accident, the occupants exited the car. Plaintiff was bleeding from a head wound, and had injured her leg. Plaintiff and Ms. Partain, now on the other side of the canal, began walking toward the Airline | r,Highway area. Because of plaintiffs injured leg, she leaned on Ms. Partain part of the way, and Ms. Partain carried her part of the way. They walked to Earhart Blvd, and then recognizing where they were, they began to walk down Earhart Blvd. Ms. Partain tried to flag down cars as they passed, but none would stop. When they reached the corner of Earhart Blvd. and Cleary Ave., they went toward Airline Highway. They then saw a police ear that they were able to flag down. They were transported by ambulance to Ochsner Hospital.
 

 Deputy Peggy Thibodeaux was qualified as an expert as a traffic officer and in traffic investigation. She testified that she received a call that the accident had occurred at 12:25 am. She arrived at the scene of the accident at 12:33 am. When she first observed the scene, she did not see the driver of the vehicle. She saw two boys sitting in the grass on the other side of the canal from where the car was located. It was cloudy when she arrived; it had rained earlier and the road surface was wet. She measured 69 feet of skid marks. There were no markings on the railroad tracks themselves to show where the car traversed, so she thought that the car may have become airborne.
 

 
 *924
 
 She then went to the hospital, where the driver (Ms. Partain) had been taken. She interviewed Ms. Partain who stated that she had been drinking and had consumed two beers, a daiquiri and two shots of tequila. Deputy Thibodeaux testified that she was not able to do a filed sobriety test because there were doctors attending Ms. Partain. She noticed that Partain’s speech was slurred and she was stuttering. Deputy Thibodeaux also testified that she observed a strong smell of alcohol. A blood test was administered at 2:40 am, and the results showed that Ms. Partain had a blood alcohol level of |ti.15. Ms. Partain was arrested for driving while intoxicated and transported to Central Lockup.
 

 Gail Hughes, the intake officer at Central Lockup, testified that she performed the health screening of Ms. Partain. The health screening intake form indicated that this was done at 5:45 am. Ms. Hughes could smell alcohol on Partain’s breath, but visual observations did not indicate that she was under the influence. Hughes did not observe any confusion, staggering, slurred speech or unconsciousness.
 

 Diane Gonzales, plaintiffs mother, testified that she spoke with Ms. Partain while she was at the hospital. Partain was crying and upset, however she did not have slurred speech and she did not see signs of impairment.
 

 Dr. William Troxler, the emergency room doctor who examined both Ms. Par-tain and plaintiff, testified that Partain admitted that she had been drinking prior to the accident. There was nothing in his report that reflected signs of intoxication.
 

 Dr. Joseph Litner, an expert in emergency room medicine, testified by video deposition. He stated that blood alcohol levels did not always indicate whether a person was intoxicated because different patients would metabolize alcohol at different rates. He reviewed both the EMT records and the emergency room intake form of Ms. Partain. The EMT form did not have any reference to intoxication, although it did report that Ms. Partain admitted that she consumed alcohol and that her breath smelled of alcohol. The emergency room intake form also stated that Ms. Partain had alcohol on her breath, but did not contain any description of alcohol impairment. He further testified that if Ms. Partain had exhibited signs of impairment; it would have been standard procedure to record those signs on the intake form. On cross-examination, it was pointed out to Dr. Litner that the [ emergency room form stated that Ms. Partain reported that she lost consciousness at the accident and that she was confused at the hospital. He stated that these findings could have been the result of her striking her head during the accident or because she was intoxicated. Dr. Litner also agreed that the two and one half hour period between the time of the accident and the time Ms. Partain’s blood was drawn would have allowed for some of the alcohol in her system to be metabolized, thereby lowering her blood alcohol level.
 

 At the trial of this matter, Ms. Partain was specifically asked if intoxication was the cause of this accident and she responded, yes, that it was.
 

 At trial, it was established that the DOTD was responsible for the end of La-barre Road, and that NOPB was responsible for the railroad tracks.
 

 Anthony Marinello was employed by NOPB at the time of the accident. He stated that while NOPB was a public entity, the City of New Orleans did not support it, and that it generated its own income and it owned property.
 

 Marinello testified that at the time of the accident, the end of Labarre at the canal was marked by a chain and a stop
 
 *925
 
 sign secured at each side of the street to a pole. Raymond Lobrano, track supervisor with NOPB, also testified that the end of the street was marked with a chain and stop sign.
 

 Leroy Henderson, a resident of Labarre Road, testified that he had lived in that area for 29 years, and during that time on three occasions a vehicle had crossed the railroad tracks and gone into the canal. At the time of the accident, the end of Labarre was marked with a chain stretched across the end of the street, approximately 3 feet from the ground, and a stop sign hanging from the middle of the chain. He stated that on some occasions, the 1 ¡¡chain and stop sign would be missing. He stated that on the other side of the canal, the road leads to Airline Drive. At night, it sometimes appears that the road goes through to Airline when the chain and sign are not present.
 

 William Duplaisir, Jr. worked for the Jefferson Parish Department of Drainage, and was in charge of maintenance of the Hoey Canal. To maintain the canal, it was necessary to cross the railroad tracks at various places. He testified that the area at the end of the canal was marked with a chain, and a stop sign 3 to 4 feet off the ground. Mr. Pratt Reddy, Director of Drainage for Jefferson Parish testified that his records reflected that from April of 1997 to October of 1998, the drainage department did not use Labarre Rd. to maintain the canal.
 

 Robert Roth testified that during the time of the accident, he was the district maintenance engineer for the DOTD in New Orleans, and was responsible for overseeing the maintenance and operation of DOTD facilities, including roadways, bridges and movable bridges. He stated that it was DOTD’s responsibility to install signs, not NOPB. Mr. Morvant, traffic engineer, would inform him by memorandum of particular problems with projects or maintenance. There was a superintendent who would ride the streets and report problems if seen. He stated that typically a dead end sign would be in advance of the last intersecting street, right past the corner so that a motorist would see it.
 

 Chris Morvant, district traffic engineer supervisor with the DOTD testified that he knew of nothing to show that NOPB requested signage at the end of Labarre. He wrote a report in which he suggested guard rails and signs, and he suggested a physical barrier at the end of Labarre Road.
 
 [1]
 
 He ^further testified that he was not aware that Jefferson Parish needed access to the canal or he would not have suggested the physical barrier.
 

 Dr. Oscar Franklin Griffith was qualified as an expert in physics and accident reconstruction. He testified as to reaction times of an individual when confronted with an emergency and stated that the average time was 1.1 second. His testimony on direct and cross examination varied the reaction time of Ms. Partain from 1.4 to 1.7 seconds. He further testified that he did not believe that alcohol played a significant role in the accident, based on the reaction of 1.4 seconds. Dr. Griffith calculated that, based the distance and trajectory of the car, Partain had been traveling around 30 miles per hour when she applied her brakes. On cross-examination, and utilizing the 69 feet of skid marks observed by Deputy Thibodeaux, he stated that the car would have been traveling around 43 miles per hour, when Partain slammed on her brakes, and that the car slowed to 30 miles per hour before traversing the canal. Un
 
 *926
 
 der this scenario he calculated Partain’s reaction time as 1.7 seconds.
 

 Duane Evans, an expert in traffic engineering, examined the area of the accident and concluded that there should have been dead end sign in each block and end of the road markers with a stop sign at the end. He stated that at night, the visibility of a traffic light on Airline Drive across the canal created an illusion that Labarre was a through street. It was his opinion that the road condition was negligent, and that a DOTD inspector should have noticed this condition. He opined that there was no way to be sure whether an intoxicated driver going 35 mph would have stopped, even if the street had been marked as he thought it should have been.
 

 After trial on the merits, the jury found that the DOTD was not negligent. The trial court also found that NOPB was not negligent. The | inverdiets of the court and the jury were made judgments of the court. The trial court, in its reasons for judgment, cited a combination of speed, alcohol and a wet road, and found that Ms. Partain was negligent and that her negligence was the proximate cause of the accident.
 

 In her appeal, plaintiff lists twelve allegations of error, which she consolidates into six issues for review.
 

 In her first argument, plaintiff contends that the trial court erred in qualifying Deputy Peggy Thibodeaux as an expert, and in allowing Deputy Thibodeaux to testify as to her interpretation of the causes of the accident and her assessment of Ms. Partain’s condition. Plaintiff contends that while Deputy Thibodeaux was qualified only as an expert in traffic investigation, she was allowed to testify as to her opinions in the areas of accident reconstruction, traffic engineer, physicist, and physician. Plaintiff further contends that the trial court erred in allowing Deputy Thibodeaux’s opinion testimony concerning Ms. Partain’s intoxicated condition at the time of the accident.
 

 Pursuant to plaintiffs motion, the trial court conducted a
 
 Daubert
 
 hearing, and ruled that Deputy Thibodeaux could testify as to what she had put in her report investigating the accident, and that she was qualified to give her opinion as an expert regarding the accident as an accident investigator. During the course of the hearing, Deputy Thibodeaux testified that she had been a police officer for fourteen years, and was assigned to the traffic division for ten of those years. As part of her training, Deputy Thibodeaux took accident investigation classes, but not accident reconstruction classes, and also classes for the administration of field sobriety tests.
 

 hrAt trial, the plaintiff re-urged her objection to Deputy Thibodeaux’s report, alleging that she was not qualified to state some of conclusions found therein.
 

 In
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the U.S. Supreme Court said that the trial judge must ensure that the scientific testing admitted is not only relevant but also reliable. The holding of
 
 Daubert
 
 was extended to include inquires into the admissibility of expert testimony other than scientific testimony. See;
 
 Kumho Tire Co., Ltd. v. Carmichael,
 
 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). In
 
 Kumho,
 
 the court also explained that the factors in
 
 Daubert
 
 are not mandatory, and are not necessary in every circumstance.
 
 Id.
 
 The ultimate decision on whether the factors of
 
 Daubert
 
 should be used rests with the trial judge. “Whether
 
 DaubeH’s
 
 specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine.”
 
 Kumho,
 
 119 S.Ct. at 1176.
 
 *927
 

 City of Kenner v. Parker,
 
 05-250 (La.App. 5 Cir. 11/29/05), 918 So.2d 479, 484.
 

 In the
 
 Parker
 
 case,
 
 supra,
 
 the court considered that
 
 Daubert’s
 
 concern was with “determining the admissibility of new techniques as a basis for expert scientific testimony,” citing
 
 Merlin v. Fuselier Construction Company, Inc.,
 
 00-1862 (La.App. 5 Cir. 5/30/01), 789 So.2d 710, 718. The
 
 Parker
 
 court further stated that “The trial judge has broad discretion in determining whether to admit or exclude expert testimony, and this Court will not overturn that decision absent a showing of ah abuse of that discretion. Included in that discretion is the trial judge’s decision on whether
 
 Daubert’s
 
 specific factors are reasonable measures of reliability in a particular case.” at page 484, 113 S.Ct. 2786, (citations omitted.)
 

 Iii>ln this case, we find no error in the trial court’s ruling that allowed Deputy Thibodeaux to testify as to the contents of her investigation report of the accident.
 

 Plaintiff contends that Deputy Thibo-deaux’s testimony included not only her findings as an investigator, but also her opinions of how the accident occurred despite the fact that she was not qualified as an accident reconstructionist. Defendants respond that the testimony to which plaintiff objects was actually elicited by plaintiff. We have reviewed the testimony of Deputy Thibodeaux and we do not believe that she testified outside her area of expertise.
 

 Plaintiff also contends that Deputy Thibodeaux was incompetent to give her opinion regarding the intoxication of Partain. However, intoxication is an observable condition about which a witness may testify.
 
 State v. Kestle,
 
 07-1573 (La.12/2/08), 996 So.2d 275. “Expert testimony is not necessary when a factfinder can reasonably draw inferences based on his own knowledge and experience.”
 
 Theri-ot v. Lasseigne,
 
 93-2661 (La.9/15/94), 640 So.2d 1305,1308.
 

 Plaintiff argues that the trial court and the jury both found intoxication based on blood alcohol levels alone, despite the fact that “there is no statutory presumption of intoxication in civil cases.”
 
 Duzon v. Stallworth,
 
 01-1187 (La.App. 1 Cir. 12/11/02), 866 So.2d 837, 854-855,
 
 writ denied, Duzon ex rel. Community of Acquiets and Gains v. Stallworth,
 
 03-0589 (La.5/2/03), 842 So.2d 1101. We find no merit to this assertion.
 

 Deputy Thibodeaux testified as to Ms. Partain’s condition and stated that her observations led to her conclusion that Partain was intoxicated. These observations included that Ms. Partain was stuttering/slurring and smelled strongly of alcohol, and further that she admitted that she had been 11sdrinking. She admitted to consuming 1 daiquiri, 2 beers and 2 shots of tequila. In addition, Ms. Partain herself stated that alcohol consumption was the cause of the accident.
 

 Plaintiff further contends that the trial court should not have allowed Deputy Thibodeaux to state her opinion concerning plaintiffs impairment, alleging that her opinion was contrary to the testimony of Dr. Litner and others, including Dr. Griffith. Plaintiffs complaint goes not to admissibility, but rather to credibility:
 

 The finder of fact is required to assess the credibility of both expert and lay witnesses to determine the most credible evidence.
 
 Magee v. Pittman,
 
 98-1164, p. 12 (La.App. 1 Cir. 5/12/00), 761 So.2d 731, 742, writ denied, 00-1684 (La.9/22/00), 768 So.2d 602. The appellate court applies the manifest error standard in deciding conflicts between expert and lay testimony.
 
 St. Martinville, L.L.C. v. Louisiana Tax Commis
 
 
 *928
 

 sion,
 
 05-457, p. 8 (La.App. 1 Cir. 6/10/05), 917 So.2d 38, 44. In applying the manifest error standard of review, the appellate court must determine not whether the factfinder was right or wrong, but whether his finding was a reasonable one.
 
 Id.; Stobart v. State, Department of Transportation and Development,
 
 617 So.2d 880, 883 (La.1993)
 

 Johnson v. E.I. DuPont deNemours & Co., Inc.,
 
 7 So.3d 734, 08-628 (La.App. 5 Cir. 1/13/09).
 

 Based on the foregoing we find that the trial court did not err in allowing Deputy Thibodeaux to testify, as an accident investigator, to the contents of her police report and to testify concerning her observations of Ms. Partain’s impairment.
 

 Plaintiff next argues that the trial court erred in failing to liability on the part of DOTD and NOPB. She also contends that the court erred in failing to find a defective condition in the roadway under R.S. 9:2800. In conjunction with this argument, plaintiff also alleges that trial court committed reversible error in faffing to include the elements of LSA-R.S. 9:2800 in its jury interrogatories. In her fourth argument, plaintiff also |14argues that the trial court erred in refusing to allow proffer-3 into evidence, which would have presented evidence to show the defective condition of the roadway.
 
 [2]
 
 Plaintiff contends that these errors mandate a reversal of the trial court’s ruling and requests that this Court conduct a de nova review of this case. However, as discussed
 
 infra,
 
 we do not find reversible error in either the court’s failure to give defendant’s requested jury charge or in its failure to admit proffer-3 into evidence. Accordingly, our review of the factual findings of the trial court is governed by the manifest error-clearly wrong standard.
 

 The manifest error-clearly wrong standard authorizes an appellate court to reverse a trial court’s factual finding only if it finds from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong.
 
 Stobart v. State, Dep’t of Transp. and Dev.,
 
 617 So.2d 880, 882 (La.1993). This standard requires that the reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding; rather, the reviewing court must review the entire record to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.
 
 Id.
 
 The appellate court must determine whether the fact finder’s conclusion was reasonable, not whether the fact finder was right or wrong.
 
 Id.
 
 Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.
 
 Id.
 
 Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be clearly wrong.
 
 Id.
 

 | ifiThe issue of liability of the defendants herein is governed by LSA-R.S. 9:2800, which provides in pertinent part:
 

 A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
 

 B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon
 
 *929
 
 liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
 

 In order to recover under this statute, a plaintiff must prove that: (1) the defendant owned or had custody of the thing that caused the damage; (2) the thing was defective in that it created an unreasonable risk of harm to others; (3) the defendant had actual or constructive knowledge of the defect or unreasonable risk of harm and failed to take corrective action within a reasonable time; and (4) the defect was a eause-in-fact of plaintiffs’ injuries.
 
 Charan v. Bowman,
 
 06-0882 (La.App. 1 Cir. 8/1/07), 965 So.2d 466, 469-470,
 
 writ denied,
 
 07-1773 (La.11/9/07), 967 So.2d 505. To recover, plaintiff bears the burden of proving all these inquiries in the affirmative and failure on any one is fatal to the case.
 
 Netecke v. State ex rel. DOTD,
 
 98-1182 (La.10/19/99), 747 So.2d 489.
 

 In this case, the plaintiff failed to prove that the roadway was defective, and that the condition of the roadway caused the accident.
 

 Concerning the condition of the roadway, whether it was unreasonably dangerous is a question of fact and should only be reversed if it is manifestly erroneous or clearly wrong.
 
 Rizzuto v. State, Dep’t of Transp. and Dev.,
 
 2002-1687 (La.App. 4 Cir. 3/17/04), 870 So.2d 1034, 1041. Ms Partain stated that she did not see a dead end sign when she | ^entered the last block of Labarre, however, she admitted that she had seen several dead end signs. Ms. Partain further stated that she did not see a barrier when she entered the roadway, however pictures of the accident show the chain of the barrier stretched across the hood of the car. While Ms. Partain stated that she did not see a stop sign, several witnesses testified that when the chain was there, the stop sign was also there. In addition, while it was acknowledged that this may have not been the best marking of the roadway, a rational trier of fact could have found, and the trial court did so find, that this method of marking the dead end was not unreasonably dangerous.
 

 In addition, a rational trier could have found that the accident was caused, not by the method of marking the roadway to show that it ended, but by Ms. Partain’s intoxication. Deputy Thibodeaux testified that Partain exhibited intoxicated behavior and her blood level alcohol was .15 over two hours after the accident. In addition, Ms. Partain herself testified that alcohol was the cause of the accident.
 

 Accordingly, we cannot find that the trial court was manifestly wrong in concluding that NOPB was not liable. Also we cannot find that the jury was wrong in concluding that DOTD was not negligent.
 

 To support her request that this Court conduct a de novo review, plaintiff argues that the trial court erred in not giving his suggested jury charges. She further contends that the court’s jury charges, especially charges one and two concerning the negligence of the DOTD and NOPB were deficient.
 

 LSA-C.C.P. Article 1812 provides that the court must inform the parties of the special verdict form and instructions it intends to submit to the jury within a reasonable time prior to their argument to the jury. If an issue |17of fact raised by the pleadings or by the evidence is omitted, the parties waive their objection, un
 
 *930
 
 less they raise the issue before the jury retires.
 
 Soares v. Lewis,
 
 566 So.2d 129 (La.App. 5 Cir. Jun 25, 1990).
 

 In this ease, while plaintiffs counsel objected to the trial court’s failure to use his jury interrogatory form, he did not specifically object to jury charges one and two, of which he now complains. By failing to make a specific objection to those interrogatories before they were presented to the jury, plaintiff her right to have the issue considered on appeal.
 
 Vaughan Contractors, Inc. v. Cahn,
 
 629 So.2d 1225 (La.App. 4 Cir. Nov 30, 1993)
 
 writ denied
 
 94-0393 (La.4/22/94), 637 So.2d 156,
 

 Also in conjunction with this argument of liability, Plaintiff argues that the trial court erred in failing to allow Proffer-3, a letter and attached diagram prepared by Chris Morvant of DOTD. These documents were the subject of a motion in limine prior to trial, at which the trial court denied the introduction of the report. Plaintiff filed an application for writ of review from that decision, and this Court denied relief, stating that:
 

 Third, the trial judge did not allow the DOTD memorandum into evidence. Instead, the ruling allows evidence concerning the memorandum to be elicited through the testimony of DOTD employees. To the extent that relator challenges the ruling denying its admissibility, we conclude the trial court did not err in ruling the memorandum was inadmissible.
 
 See, Palacios v. Louisiana and Delta R.R., Inc.,
 
 740 So.2d 95 (La.1999).
 

 Gonzales v. State of Louisiana Department of Transportation and Development, et al,
 
 07-785 (La.App. 5 Cir. 10/26/07)(unpublished.)
 

 In this appeal, plaintiff alleges that Mor-vant’s letter was admissible as it was not part of a federally mandated study. Plaintiff requests that this Court reverse itself and consider the memorandum and diagram.
 

 The record reflects that plaintiff and defendants conducted extensive cross-examination of Mr. Morvant concerning the contents of the letter and 11Rdiagram, and therefore any error in denying their admittance into evidence was harmless.
 

 Plaintiff next raises the issue of comparative fault and challenges the failure of both the court and the jury to find any comparative fault on the part of defendants. Plaintiff contends that defendants were comparatively at fault in the cause of the accident, based on the condition of the roadway. She further contends that she should not be found comparatively at fault for riding with an impaired driver, because it is her contention that Partain was not materially impaired.
 

 Because we find that neither the trial court nor the jury committed manifest error in finding that there was no negligence on the part of defendants, we also find that there was no error in the failure to assign comparative fault to those defendants. Furthermore, because Ms. Partain and/or her insurer were not parties at the time of trial, and there is no judgment of liability against them, any question of plaintiffs comparative negligence is moot.
 

 In her sixth and last issue, plaintiff alleges that the trial court erred in allowing a HIPPA (the federal Medical Privacy Act) violation to go uncorrected. Plaintiff alleges that defense counsel had met with Dr. Troxler without medical releases from her. Plaintiff admits that she does not know what was said at this “meeting” between Troxler and defense counsel.
 

 Both defendants state that NOPB’s attorney only asked general questions of Dr. Troxler which were not in
 
 *931
 
 violation of HIPPA. They further argue that since the issue of damages was never reached, any alleged violation was harmless. Finally, they allege that plaintiff waived her objection, because the trial court told the attorneys that she was going to instruct the jury to disregard any reference to a violation of patient-client | ^confidentiality, to which the plaintiffs attorney replied, “That’s fine. Let’s do that.”
 

 Based on the record before us, we find that plaintiff did not prove a violation of her HIPPA rights. We further find that plaintiff waived any objection she might have had.
 

 For the above discussed reasons, the judgment of the trial court is affirmed. Costs are assessed against appellant.
 

 AFFIRMED.
 

 [1]
 

 . Morvant’s report was the subject of Proffer-3, discussed infra. Although the report itself was deemed inadmissible, this court held that Morvant could discuss its contents.
 

 [2]
 

 . In her list of arguments, plaintiff alleges that the trial court erred in failing to admit Proffers 1, 2 and 3. The admissibility of proffers 1 and 2 are not briefed and are deemed abandoned.