JUDE G. GRAVOIS, JUDGE
| Plaintiffs, John E. Acker and Raquel S. Acker, appeal damage awards rendered in their favor by a jury, arguing that the jury abused its discretion in awarding them inadequate general damages and in failing to award loss of consortium damages in favor of their minor children. They also argue that the trial court erred in denying their motion for judgment notwithstanding the verdict, or in the alternative for a new trial, or in the alternative for additur. For the following reasons, we affirm the trial court’s judgment rendered pursuant to the jury’s verdict. We further affirm the trial court’s judgment that denied plaintiffs’ motion for judgment notwithstanding the verdict, or in the alternative for a new trial, or in the alternative for additur.
FACTS AND PROCEDURAL HISTORY
This matter arises from a vehicular accident that occurred on February 7, 2012 on Interstate Highway 10 (“I—10”) in Metair-ie, Louisiana, between plaintiffs’ vehicle (a Chevy Tahoe SUV) and a dump truck owned by defendant, Earl’s Plumbing & Heating, L.L.C. (“Earl’s Plumbing”), and being driven by its employee, Jimmy Lee. On January 24, 2013, Mr. and Mrs. Acker filed a petition for damages against Earl’s Plumbing and Mr. Lee, seeking damages they allegedly sustained as a result of said accident.[1],[2] A jury trial was conducted on the matter on November 3 and 4, 2015.
The accident in question occurred as plaintiffs were on their way to pick up an insulin pump for their daughter, Alyssa, who was seated in the back seat of their vehicle. Plaintiffs were traveling in the right eastbound lane of 1-10 near the Veterans Boulevard overpass.[3] Mr. Lee was also traveling eastbound in the center 12lane of I—10 a short distance behind plaintiffs’ vehicle. As Mr. Lee drove up the overpass, he changed into the right lane of travel in anticipation of exiting the interstate at its next exit. As Mr. Lee came over the overpass, he saw that plaintiffs’ vehicle was braking because of a slowed or *1242 stopped vehicle (hereinafter, the “third party/unknown vehicle”) in front of plaintiffs’ vehicle. Mr. Lee attempted to slow down and also quickly attempted to avoid plaintiffs’ vehicle by changing back into the center lane, but in doing so, the left side of his dump truck struck a Wal-Mart tractor-trailer. The impact of that contact pushed Mr. Lee’s dump truck back into the direction of plaintiffs’ lane of travel. Mr. Acker testified that he saw the dump truck coming up quickly behind his vehicle and attempted to avoid the dump truck by steering his vehicle to the right. Mr. Lee was able to avoid striking the back of plaintiffs’ vehicle, but in the process of passing along the left side of plaintiffs’ vehicle, scraped plaintiffs’ vehicle, causing scuffing, scraping, and other relatively minor damages to the driver’s side of plaintiffs’ vehicle, including knocking loose the left rear wheel fender trim of plaintiffs’ vehicle, as well as dislodging the driver’s side mirror of plaintiffs’ vehicle.
Following the accident, after speaking with the police, plaintiffs continued on their errand. The next day, after feeling his back and neck “cramping up,” Mr. Acker went to see Dr. Mitchell Brien, a chiropractor who had treated him following a previous car accident in 2008. Mr. Acker complained to Dr. Brien of not being able to fully turn his neck, and also of hearing grinding when he did turn it, as well as back pain. Following a full examination, Dr. Brien released Mr. Acker to full duty at work as an equipment operator and ordered conservative treatment twice a week for several months. After about eight months, Mr. Acker’s back pain resolved, but not his neck symptoms. Consequently, Dr. Brien ordered an MRI, which he determined showed bulging discs in Mr. Acker’s neck. In November of 2012, Mr. Acker was referred to Dr. Lucien Miranne, a ^neurosurgeon. The evidence shows that Mr. Acker did not further treat with Dr. Brien after his referral to Dr. Miranne.
Dr. Miranne ordered that Mr. Acker undergo several additional diagnostic tests, including a myelogram and an E.M.G. study. These studies showed that Mr. Acker, who was 44 years old at the time of this injury, had a “disc spur complex” at “C4-5.”[4] Dr. Miranne, who testified as an expert at trial, said that these findings indicated evidence of both old and new changes to the disc area. Dr. Miranne had no reason to doubt that Mr. Acker’s neck symptoms were caused by the instant accident, but felt that no surgery was indicated at the present time and could not say that surgery was definitely indicated in the future. Dr. Miranne testified that Mr. Acker did not tell him about his previous accidents.
Mr. Acker testified regarding his past accidents and injuries. He said that in 1986, he was in a ear accident involving an overturned vehicle, for which he filed a lawsuit. In 1998, he was in a second car accident in which he sustained back and neck injuries, for which he sought chiropractic treatment from Dr. Brien. Mr. Acker also filed a lawsuit in connection with that accident.
Mr. Acker slipped and fell at his work place in 1998, and was off of work under disability for approximately two years while he underwent conservative treatment for back symptoms. He refused recommended surgery. That job entailed heavy lifting. He testified that he was able to return to the same type of work, labor and equipment operating, by practicing yoga, martial arts, and weaning off of pain medication. In 2008, Mr. Acker was involved in another car accident, injuring his back again, for which he filed a lawsuit. His pain resolved with chiropractic treat *1243 ment, and according to him, he was not symptomatic at the time of the instant accident.
Mr. Acker testified that he has always participated in martial arts. He admitted that he was treated for a groin muscle injury he sustained in 2013, after the instant accident, while allegedly attempting to do a front or forward flip.
Mrs. Acker, thirty-three years old at the time of the instant accident, also sought treatment with Dr. Brien. Her complaints to him after this accident consisted primarily of lingering low back pain, with radiation to the left buttock, though she also initially reported headaches and neck pain. She was also treated conservatively by Dr. Brien for several months, with twice weekly heat, stretching, massage, and chiropractic adjustment, which she said helped alleviate her symptoms for several days, but which would return after that. When Mrs. Acker’s reported symptoms did not abate, Dr. Brien ordered an MRI, which was performed in October of 2012 and which showed a bulging disc at “L4-5.”[5] She was also referred to Dr. Miranne for consultation.
Dr. Miranne compared the findings of Mrs. Acker’s 2012 MRI to a previous MRI scan of Mrs. Acker from 2008, when she had injured her back at work, and opined that the disc herniation was not present on the earlier scan. He related her current symptoms to the 2012 accident at issue. However, he did not recommend surgery for Mrs. Acker.
Mrs. Acker testified to a history of several accidents as well. In 2008, she injured her back at work lifting heavy pallets. She missed four months of work and was treated by Dr. Ralph Gessner, a chiropractor. In 2009, she was in a car accident that caused serious damage to her vehicle, for which she was at fault. However, she denied being injured in that accident.
Mrs. Acker testified at trial that she can no longer participate in Zumba, or play basketball with her son, or ride bikes on the levee with her daughter.
|fiAt the conclusion of the trial, the jury apportioned liability between Mr. Lee (80%) and the “third party/unknown vehicle” (20%). Plaintiffs were found to be free from fault in causing the accident. The jury concluded that Mr. and Mrs. Acker were injured in the accident, and awarded them $17,000.00 and $9,500.00 in past medical expenses, respectively. The jury did not award the Ackers damages for future medical expenses. The jury also awarded Mr. and Mrs. Acker $3,000.00 each for past and future mental anguish and loss of enjoyment of life, and $3,000.00 and $1,000.00, respectively, for past and future pain and suffering. The jury declined to award the Ackers’ minor children loss of consortium damages. On December 11, 2015, the trial court rendered a written judgment in accordance with the jury’s verdict.
On December 17, 2015, plaintiffs filed a motion for judgment notwithstanding the verdict, or in the alternative for a new trial, or in the alternative for additur. At the end of a hearing conducted on the motion on March 21, 2016, the trial court orally denied the motion. A written judgment to that effect was signed by the trial court on April 1, 2016.
Defendants have not appealed the jury’s finding regarding liability, nor the jury’s finding that Mr. and Mrs. Acker were injured in the accident, nor the jury’s damage awards made to Mr. and Mrs. Acker.
On appeal, plaintiffs have asserted the following assignments of error, to-wit:
1) The jury abused its discretion in awarding Mrs. Acker $1,000.00 in *1244 damages for past and future physical pain and suffering.
2) The jury abused its discretion in awarding Mrs. Acker $3,000.00 for past and future mental anguish and loss of enjoyment of life.
3) The jury abused its discretion in awarding Mr. Acker $3,000.00 in damages for past and future physical pain and suffering.
4) The jury abused its discretion in awarding Mr. Acker $3,000.00 in damages for past and future mental anguish and loss of enjoyment of life.
h5) The jury abused its discretion in failing to award Mr. and Mrs. Acker damages for future medical expenses.
6) The jury’s failure to award damages for loss of consortium to either of the Acker children, and in particular Alyssa, who was riding in the Acker vehicle at the time of the accident, was clear error and against the law and the evidence presented.
7) The trial court erred in denying plaintiffs’ motion for judgment notwithstanding the verdict, or in the alternative a new trial, or in the alternative additur.
ANALYSIS
ASSIGNMENTS OF ERROR NUMBERS ONE-FOUR

General damage awards to Mr. and Mrs. Acker

The Supreme Court has stated, in Youn v. Maritime Overseas Corp., 92-3017, 623 So.2d 1257, 1260 (La. 1993), that “the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact.” The Youn court said that the discretion vested in the trier of fact is “vast,” so that an award of general damages should rarely be disturbed by an appellate court. Only when an abuse of discretion is found should the appellate court resort to consulting other damage awards for similar injuries. Id.
The record shows that the nature of the impact between plaintiffs’ vehicle and Mr. Lee’s dump truck was of the scraping type between two vehicles traveling in the same direction next to each other. Parts of the driver’s side of plaintiffs’ vehicle were damaged by the dump truck as it passed along the side of plaintiffs’ vehicle, including scraping of the side panels, loosening of the left rear wheel fender trim, scraping of the left rear tire, and dislodging of the driver’s side mirror. The record thus supports the jury’s apparent conclusion that the contact between the vehicles was not of significant forceful impact. The Ackers described the accident as a “shaking,” similar to being passed by a large truck, or like being in a “tornado,” and of short duration. The evidence is also clear that plaintiffs’ vehicle |7was still drivable after the accident, and that they were able to continue on with their planned activities that day in their vehicle after the accident.
Dr. Brien, Mr. Acker’s treating chiropractor, testified that after the initial examination on February 8, 2012, he released Mr. Acker without physical restrictions at work and without prescription pain medication. Mr. Acker worked in a job that required him to perform some physical labor and equipment operating, as he had in past jobs as well. Dr. Brien testified that over the next several months of conservative treatment, Mr. Acker never complained that his neck symptoms prevented him from working without restrictions, and Mr. Acker never sought a medical excuse with restrictions from Dr. Brien. Mr. Acker testified that he did not miss any work as a result of this accident and was not making a claim for lost income.
*1245 The evidence shows that Mr. Acker treated with Dr. Brien until around September or October of 2012, when he was referred to Dr. Miranne. Mr. Acker had several visits with Dr. Miranne, but did not treat further with Dr. Brien. Likewise, Mrs. Acker also treated with Dr. Brien until her referral to Dr. Miranne, whom she saw twice according to her testimony. She did not further treat with Dr. Brien after the referral to Dr. Miranne. She also testified that she did not miss any work due to this accident.[6]
Mr. Acker also admitted to participating in martial arts, and after this accident, to hurting his groin while allegedly attempting to do a front or forward flip. The record shows that Mr. Acker had a history of back and neck injuries from accidents, some of which resulted in lawsuits. The jury also heard that plaintiffs’ minor daughter, who was also riding in the Ack-ers’ vehicle at the time of the accident, made no claim for personal injuries.[7]
lRUpon review, we find that the evidence in the record clearly supports the jury’s conclusion that Mr. Acker was not seriously injured in this accident. The jury awarded Mr. Acker, in addition to his medical expenses, a total of $6,000.00: $3,000.00 in damages for past and future physical pain and suffering and $3,000.00 in damages for past and future mental anguish and loss of enjoyment of life. After reviewing all of the evidence in the record, we cannot say that the jury abused its vast discretion in its general damage awards to Mr. Acker.
Mrs. Acker also argues that the general damages awarded to her is abusively low. In addition to her medical expenses, the jury awarded Mrs. Acker $1,000.00 for past and future pain and suffering, and $3,000.00 for past and future mental anguish and loss of enjoyment of life. Again, considering all of the evidence in the record, we cannot say that the damage awards to Mrs. Acker, while low, are an abuse of the jury’s vast discretion in fashioning its general damage awards to Mrs. Acker.
These assignments of error are without merit.
ASSIGNMENT OF ERROR NUMBER FIVE

Future medical expenses

In this assignment of error, plaintiffs argue that it was an abuse of discretion for the jury to decline to award them damages for future medical expenses. However, a review of the jury verdict form shows that plaintiffs did not request future medical expenses therein. Nor did plaintiffs object to the jury verdict form. By failing to make a specific objection to the jury interrogatories before they were presented to the jury, plaintiffs have waived their right to have this issue considered on appeal. Gonzalez v. Gov’t Emples. Ins. Co., 09-140 (La.App. 5 Cir. 2/09/10), 32 So.3d 919, 930. See, e.g., Perkins v. Guidry, 15-1177 (La.App. 3 Cir. 4/05/16), 191 So.3d 1182, 1189. Accordingly, this assignment of error is without merit.[8]
*1246 ASSIGNMENT OF ERROR NUMBER SIX

Loss of consortium damages to minor children

Next, plaintiffs argue that it was clear error for the jury to decline to award damages for loss of consortium to either of the Acker children, and in particular Alyssa, who was in the Ackers’ vehicle at the time of the subject accident.
In the context of the parent-child relationship, an award for loss of consortium is properly made where there has been some measurable or compensable loss, such as loss of love and affection, society and companionship, right of performance of material services, right of support, aid and assistance, and felicity. Turner v. Lyons, 03-0186 (La.App. 4 Cir. 1/28/04), 867 So.2d 13, 22. A loss of consortium award is a fact-specific determination, to be decided on a case-by-case basis, and is to be disturbed only if there is a clear showing of an abuse of discretion. Id.
In this particular case, Mrs. Acker testified that she occasionally played basketball with her son and occasionally rode bikes on the levee with her daughter, but was no longer able to enjoy those activities with her children. There was, however, no testimony that the Acker children “missed out on a lot of fun and companionship they shared with their young parents before the accident,” as argued by plaintiffs on appeal. Likewise, there is a dearth of evidence that Mr. Acker’s neck symptoms have prevented him from being able to attend his children’s unspecified activities and events. The record as a whole fails to show that the Acker children were deprived of their parents’ love and affection, society | ]nand companionship, right of performance of material services, right of support, aid and assistance, and felicity as a result of this accident.[9]
Considering the record as a whole, we find that under the facts of this case, the jury’s failure to award the Acker children loss of consortium damages was not an abuse of discretion. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER SEVEN

Denial of motion for judgment notwithstanding the verdict

Finally, plaintiffs argue that the trial court erred in denying their motion for judgment notwithstanding the verdict regarding the damage awards.
This Court, in Thistlethwaite v. Gonzalez, 12-130 (La.App. 5 Cir. 12/18/12), 106 So.3d 238, 251, summarized the law regarding the granting of a judgment notwithstanding the verdict, to-wit:
Louisiana Code of Civil Procedure article 1811 provides for and controls the use of a judgment notwithstanding the verdict. A trial court’s authority to grant a judgment notwithstanding the verdict under Article 1811 is limited by the jurisprudence to those cases where the jury’s verdict is absolutely unsupported by any competent evidence. Davis v. Lazarus, 04-0582 (La.App. 4 Cir. 3/8/06), 927 So.2d 456,461. The strict criteria for granting a judgment notwithstanding the verdict is grounded on the rule that when there is a jury, the jury *1247 is the trier of fact. Smith v. State, Dept. of Transp. & Development, 04-1317, 04-1594 (La. 3/11/05), 899 So.2d 516.
In ruling on a motion for a judgment notwithstanding the verdict, the trial court considers whether the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable persons could not arrive at a contrary verdict. Joseph v. Broussard Rice Mill, Inc., 00-0628 (La. 10/30/00), 772 So.2d 94 (citing Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La. 1986)). The trial court must deny the motion if evidence opposing the motion “is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions.” Id., at 99. In its consideration, the trial court is not to evaluate the credibility of the witnesses and it must resolve all reasonable inferences or factual questions in favor of the non-moving party. Id.
Previously in this opinion, this Court has found that the damage awards made by the jury in favor of Mr. and Mrs. Acker were amply supported by the 1n evidence in the record, including plaintiffs’ testimonies and the medical evidence admitted into evidence, and were not abusively low. It therefore follows at this juncture that we cannot say that the jury verdicts were “absolutely unsupported by any competent evidence.” Accordingly, this assignment of error is without merit.
CONCLUSION
For the foregoing reasons, the trial court’s judgment rendered pursuant to the jury’s verdict is affirmed. Further, the trial court’s judgment that denied plaintiffs’ motion for judgment notwithstanding the verdict, or in the alternative for a new trial, or m the alternative for additur, is also affirmed.
AFFIRMED

. Mr. and Mrs. Acker appeared in the petition for damages individually and as administrators of their minor children, Alyssa Acker and Devin J. Acker.

. Plaintiffs also named "America States Insurance Company," the alleged liability insurer for Earl’s Plumbing, as a defendant in the petition for damages. The record reflects, however, that the liability insurance policy covering the dump truck in question was actually issued by "American States Insurance Company."

.The record reflects that I—10 eastbound has three main lanes of travel at the location in question.

. "C” stands for cervical spine.

. "L” stands for lumbar spine.

. Mrs. Acker testified that she works part time at Old Navy and is otherwise a homemaker.

. Mrs. Acker testified, however, that Alyssa reported some back pain and headaches to her following the accident for which she may have seen her pediatrician and which were treated with ibuprofen.

.In any event, we further find that the evidence in the record does not support an award for future medical expenses. Plaintiffs’ treating physician, Dr. Miranne, testified that surgeiy was not indicated for either plaintiff. The evidence also reflects that once plaintiffs were referred to Dr. Miranne for evaluation, they were not treated further by Dr. Brien.

. Further, we feel compelled to point out that the fact that Alyssa Acker was in the subject accident herself is not an element of a claim for loss of consortium as a result of her parents’ injuries. Her presence in the vehicle would have been an element of a claim for her own personal injuries, but she did not make one.